## PEDERSEN v. DELAWARE, L. & W. R. CO.

### (Circuit Court of Appeals, Third Circuit. May 18, 1912.)

### No. 1,479.

**1. COMMERCE (§ 27*)—EMPLOYER'S LIABILITY ACT—CONSTRUCTION AND SCOPE.**

The federal Employer's Liability Act April 22, 1908, c. 149, § 1, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322), applies only to injuries suffered by employés while the carrier is engaged in an act of interstate transportation and to such employés only as at the time of injury have a real and substantial connection with such act of interstate transportation.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*]

**2. COMMERCE (§ 27*)—EMPLOYER'S LIABILITY ACT—INTERSTATE COMMERCE.**

Where an iron worker, employed on a railroad bridge on which an additional track was being placed for use by the railroad company in both interstate and intrastate business, was struck and injured by a local intrastate train on the old track where he had gone while after some rivets, the company was not engaged in interstate commerce, nor was the employé employed in such commerce at the time of the injury within the meaning of Employer's Liability Act of April 22, 1908, c. 149, § 1, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322), and an action to recover for the injury cannot be maintained thereunder.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*]

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

Action at law by Martin Pedersen against the Delaware, Lackawanna & Western Railroad Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Bamberger, Levi & Mandel, of Philadelphia, Pa., for plaintiff in error.

James F. Campbell, of Philadelphia, Pa., for defendant in error.

Before GRAY and BUFFINGTON, Circuit Judges, and YOUNG, District Judge.

BUFFINGTON, Circuit Judge. In the court below Martin Pedersen, a citizen of New Jersey, brought suit against the Delaware, Lackawanna & Western Railroad Company, a corporation of Pennsylvania, to recover damages for personal injuries sustained by him while its employé through its alleged negligence. His statement of claim alleged defendant was "a common carrier of passengers and goods and was engaged in commerce between several of the states of the United States of America, including commerce between the states of New York, New Jersey, Pennsylvania, and other states," and that he himself "was in the employ of the defendant as an iron worker, and was working in and upon the erection and repair of certain railroad bridges for the said defendant on the 31st day of July, 1909, at or near the city of Hoboken, in the state of New Jersey, and was on said date

and at said place employed by the defendant in such commerce between the states as aforesaid."

At the trial the court refused defendant's motion for binding instructions, and there was a verdict for plaintiff. Subsequently the court, on motion of defendant and in pursuance of the Pennsylvania statute followed by the federal courts in that state, entered judgment non obstante veredicto in its favor. Thereupon the plaintiff sued out this writ. The case turns upon the construction of section 1, Act Cong. April 22, 1908, which provides:

"That every common carrier by railroad while engaging in commerce between any of the several states or territories, or between any of the states and territories, or between the District of Columbia and any of the states or territories, or between the District of Columbia or any of the states or territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employé, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employé; and if none, then of such employé's parents, and if none, then of the next of kin dependent upon such employé, for such injury or death, resulting in whole or in part from the negligence of any of the officers, agents, or employés of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment."

The pertinent facts of this case may, as said in the brief of the plaintiff—

"be stated in the language used in the opinion in the court below as follows: 'The defendant is a common carrier of freight and passengers by rail, and does an interstate and intrastate business. At the time of the plaintiff's injury, it was engaged in building an additional track near Hoboken, N. J. Part of this track was to be laid upon a bridge, and the plaintiff was hurt upon the uncompleted structure while carrying material from one part of the work to another. The verdict establishes the fact that the negligence of a locomotive engineer was one cause of the injury, and that the plaintiff, if negligent at all, was nevertheless entitled to receive a considerable sum. The new track when finished was intended for use both in local business and in commerce between the states, but the train by which the injury was inflicted was a purely local train running between two points in the state of New Jersey. The suit is brought under the Employer's Liability Act of 1908, and the question now to be decided is whether that statute affords any relief for an injury under the foregoing facts.'"

[1] In view of the construction given this act in Mondou v. N. Y., N. H. & Hartford Railroad Co., decided January 15, 1912, 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, that "the act embraces instances where the causal negligence is that of the employé engaged in intrastate commerce, for such negligence, when operating injuriously upon an employé engaged in interstate commerce, has the same effect upon that commerce as if the negligent employé were also engaged therein," the fact that the injury was inflicted by an intrastate train is not material, and the case narrows to two questions which may be framed in the words of the statute: First. Do the foregoing facts show Pedersen was injured by the railroad "while (it was) engaging in commerce between any of the several states"? Second. Was such injury sustained by him "while he is (was) employed by such carrier in such commerce"?

'Addressing ourselves thereto, we note that the object of this act was to broaden the right to relief for damages suffered by railroad employés in interstate transportation, for the power of Congress to create such liability to such employés rests on the fact and acts of interstate transportation work which are being done both by the company and by the injured employé at the time of the injury. Mondou v. New York, etc., Co., supra, where it is said:

"The present act, unlike the one condemned in Employers' Liability Cases, 207 U. S. 463, 28 Sup. Ct. 141, 52 L. Ed. 297, deals only with the liability of a carrier engaged in interstate commerce for injuries sustained by its employés while engaged in such commerce."

In that case it is further said:

"Interstate commerce, if not always, at any rate when the commerce is transportation, is an act. Congress, of course, can do anything which, in the exercise by itself of a fair discretion, may be deemed appropriate to save the act of interstate commerce from prevention or interruption, or to make that act more secure, more reliable or more efficient. The act of interstate commerce is done by the labor of men and with the help of things; and these men and things are the agents and instruments of the commerce. If the agents or instruments are destroyed while they are doing the act, commerce is stopped. If the agents or instruments are interrupted, commerce is interrupted. If the agents or instruments are not of the right kind or quality, commerce in consequence becomes slow or costly or unsafe or otherwise inefficient; and, if the conditions under which the agents or instruments do the work of commerce are wrong or disadvantageous, those bad conditions may and often will prevent or interrupt the act of commerce, or make it less expeditious, less reliable, less economical and less secure. Therefore Congress may legislate about the agents and instruments of interstate commerce, and about the conditions under which those agents and instruments perform the work of interstate commerce, whenever such legislation bears, or in the exercise of a fair legislative discretion can be deemed to bear, upon the reliability or promptness or economy or security or utility of the interstate commerce act. In view of these settled propositions, it does not admit of doubt that the answer to the first of the questions before stated must be that Congress, in the exercise of its *power over interstate commerce*, may regulate the relations of common carriers by railroad and their employés, *while both are engaged in such commerce*, subject always to the limitations prescribed in the Constitution, and to the qualification that the particulars in which those relations are regulated must have a real or substantial connection with the interstate commerce in which the carriers and their employés are engaged."

It would seem, therefore, that just as the Safety Appliance Acts had, amongst other objects, the lessening of the dangers to employés during interstate transportation, so, in pari materia, this act was meant to broaden the relief for damages sustained by employés in such work, for sections 3 and 4 embody safety appliance acts as parts of its provisions. Moreover, when this law was passed, it was recognized that both the interstate carrier and its employés could each from time to time be engaged in such distinctive intrastate acts as precluded Congress from legislating thereon. Employers' Liability Cases, 207 U. S. 463, 28 Sup. Ct. 141, 52 L. Ed. 297. Indeed, the title of the act—"An act relating to the liability of common carriers by railroad to their employés in certain cases"—evidences a purpose to condition the imposed liability on the existence of certain statutory

requirements. Now from the emphasis laid by the Supreme Court, as quoted above, on the act of transportation as the basis of fact on which legislation, imposing liability on interstate carriers in favor of their employés engaging in such service, constitutionally rests, we are led to conclude that the injuries sustained by such employés were those suffered while they were engaged in aiding in interstate transportation service. And such is the provision of the act, for be it observed such liability is not imposed for every negligent act of the railroad, but only "while engaged in commerce between any of the several states," and not for every injury done to every employé, but only to one "suffering injury while he is employed by such carrier in such commerce." In the application of this statute the experienced trial judge in this case said:

"Difficult questions will arise in the effort to determine whether the work being done by the employé can properly be regarded as interstate commerce, and also in the effort to determine whether the carrier is also engaged in such commerce."

And we already see the conflicting conclusions reached. Taylor v. Southern Ry. Co. (C. C.) 178 Fed. 380; Zikos v. Oregon R. & Navigation (C. C.) 179 Fed. 893; Colasurdo v. Central R. R. of New Jersey (C. C.) 180 Fed. 832; Behrens v. Ill. Central R. Co. (D. C.) 192 Fed. 581. But we suggest these difficulties can be met by holding that interstate transportation by the carrier is the act which constitutes the engaging of the statute, and that the person in whose favor the liability is created, or, in the words of the statute, the one who "is employed by such carrier in such commerce," is confined to such employés as at the time of the injury "have a real and substantial connection with the interstate commerce in which the carriers and their employés are engaged"; for, it will be noted, such construction does not, by reason of the general character of their customary work, draw an arbitrary line and confer the benefit of the act on certain employés, such as engineers, firemen, conductors, and brakemen, and exclude others, such as bridgebuilders, station employés, or track laborers. On the contrary, it makes the relation of the employé's particular work to interstate transportation at the time the injury is sustained the test. This may often be a difficult subject, owing to the complicated character of a railroad's business, and illustrations may be misleading, but we think reflection will make it clear that the same kind of act may at one time be a part of interstate transportation, and at another time may have nothing to do with it. If, for example, the nature of an employé's occupation is such that he is sometimes helping to move interstate trains, and again is helping to move trains that are purely local, all that can be said as a general proposition is that the act of Congress protects him in one case, and does not protect him in the other. The power of Congress is adequate in one case, and does not exist in the other. It is inevitable that each situation must be considered by itself, and must be tested by the requirements prescribed by Congress: Was the company engaged in interstate commerce, and was the employé employed in such commerce? If both these questions are answered in

the affirmative, the act applies; otherwise it does not. Adopting this view, holding the act of interstate transportation is an engaging that creates the statutory liability and making any employé who at the time of the injury has a real and substantial part in effecting such transportation, one who "is employed by such carrier is such work," we have a rational and practical basis on which the statute may be enforced.

[2] Tested by this standard, the case below was rightly decided. The plaintiff was an iron worker on a bridge on which an additional track was being placed. In getting rivets for the bridge he went upon the main east-bound track of the road, where he was struck and injured by a local and intrastate train coming in the other direction. Under such facts, it is clear that neither by operating such local train or by building an additional track or bridge, or by sending the man for the rivets, was the carrier "engaged in commerce between any of the several states," nor was the plaintiff by helping to build such bridge, or by going upon a track which the company was not at the time using in interstate commerce "employed by such carrier in such commerce."

The judgment below must therefore be affirmed.