MARSHALL & E. T. RY. CO. v. SIRMAN.

(Court of Civil Appeals of Texas. Texarkana. Jan. 22, 1913. Rehearing Denied Feb. 6. 1913.)

1. MASTER AND SERVANT (§ 277*)—ACTION FOR INJURIES—SUFFICIENCY OF EVIDENCE—EXISTENCE OF RELATION.

In an action for the death of plaintiff's son, evidence *held* insufficient to show a contract between the son and defendant's agent, by which the latter undertook to teach the son telegraphy, and he in return agreed to assist the agent in and around the depot and pump station, so as to create the relation of master and servant between defendant and deceased.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 953; Dec. Dig. § 277.*]

2. MASTER AND SERVANT (§ 277*) — ACTION FOR INJURIES—SUFFICIENCY OF EVIDENCE—RELATION OF MASTER AND SERVANT.

Evidence, in an action for the death of plaintiff's son, *held* not to show that the relation of master and servant in any of its forms existed between the defendant and plaintiff's son, but to show that, at the time of the accident, he undertook to start a pump of his own accord, without notifying defendant's agent of his purpose.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 953; Dec. Dig. § 277.*]

3. MASTER AND SERVANT (§ 88*)—MASTER'S LIABILITY—RELATION OF PARTIES.

One engaging at the request, or with the permission of, a railroad servant, in a transaction of interest to himself, as well as to the railroad, while a volunteer and not a servant of the railroad, has a right to be protected against the negligence of its servants and to recover of the road, if he is injured thereby.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 144–151; Dec. Dig. § 88.*]

4. MASTER AND SERVANT (§§ 101, 102*)—MASTER'S LIABILITY—SAFE PLACE FOR WORK.

The master's duty to furnish his servant a safe place for work, while not a part of the stipulation usually embraced in contracts of employment, is implied in all such agreements, and is treated in law as incidental to the relation.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 174, 178, 179, 180–184, 192; Dec. Dig. §§ 101, 102.*]

5. MASTER AND SERVANT (§ 205*) — ASSUMPTION OF RISK—SERVANT'S KNOWLEDGE OF DEFECTS—PLACES OF WORK.

A servant, while in the performance of his duties under the terms of his contract, may assume that the master has provided a safe place for work, except when he knows, or in the exercise of ordinary care should know, to the contrary.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 547–549; Dec. Dig. § 205.*]

6. MASTER AND SERVANT (§ 88*) — MASTER'S DUTY—RELATION OF PARTIES—SAFE PLACE TO WORK.

A master's duty to provide his servants a safe place to work arises out of the contract made by him with them for the performance of some service, and hence is due only to those persons who sustain toward him such contractual relations.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 144–151; Dec. Dig. § 88.*]

7. MASTER AND SERVANT (§ 265*) — ACTION FOR INJURIES — BURDEN OF PROOF — RELATION OF MASTER AND SERVANT.

One who seeks to recover for a master's failure to provide a safe place for work has the burden of proving that the relation of master and servant existed at the time of the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908, 955; Dec. Dig. § 265.*]

8. MASTER AND SERVANT (§ 88*)—ASSUMPTION OF RISK—VOLUNTEER.

A person who volunteers to assist a servant of another, without being employed by such servant, assumes all the ordinary risks of the situation, so that he takes things as he finds them, and, in case of injury, cannot recover from the master of the servant he has assisted, unless the injury is such as would create a liability as to a trespasser or bare licensee.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 144–151; Dec. Dig. § 88.*]

9. MASTER AND SERVANT (§ 224*)—ASSUMPTION OF RISK—SERVANT PERFORMING WORK IN DIFFERENT DEPARTMENT.

When a servant, employed in one line of work, voluntarily undertakes to perform services for his master in a different department, he assumes all the risks that attend a bare licensee, notwithstanding that what he is doing may result in benefit to his master.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 654; Dec. Dig. § 224.*]

10. MASTER AND SERVANT (§ 88*) — FELLOW SERVANTS—EXISTENCE OF RELATION OF MASTER AND SERVANT—INVITATION OF SERVANT.

While a servant may in some cases confer upon a stranger the privilege or license of entering upon the premises of his employer, yet, without authority to do so, he cannot clothe the stranger with that protection which can only arise from a contract of employment.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 144–151; Dec. Dig. § 88.*]

Appeal from District Court, Harrison County; H. T. Lyttleton, Judge.

Action by Mrs. J. T. Sirman against the

Marshall & East Texas Railway Company. Judgment for plaintiff, and defendant appeals. Reversed, and judgment rendered for defendant.

F. H. Prendergast, of Marshall, for appellant. Beard & Davidson, of Marshall, for appellee.

. HODGES, J. On or about the 21st day of August, 1911, Terry Sirman, the minor son of the appellee, was injured by an explosion of gasoline vapor while attempting to operate a gasoline engine belonging to the appellant, and used by it for pumping water into its railroad tank. Sirman died within a few hours afterwards from the effects of his injuries. The appellee, his mother, brings this suit to recover damages for the loss of his services during his minority, and for what her son would have contributed to her support and maintenance had he lived.

Omitting the formal parts, the petition alleges, in substance, as follows: That at the town of Ashland, on appellant's line of railroad, it had installed a pumping station in which a gasoline engine was used to pump water into a tank, from which the locomotives obtained the necessary supply; that this machinery was inclosed in a small room with only one door and no windows or other openings for ventilation. The third and fourth paragraphs of the petition are as follows: "That Terry Sirman, on or about the 21st day of August, 1911, entered into a contract with the station agent of the defendant, at Ashland, to assist said station agent in the operation of said pumping station, as well as other duties around said station; that with the consent, knowledge, acquiescence, and under the direction of said station agent, on or about the 21st day of August, 1911, and in the performance of his duties, by virtue of the contract with the said station agent, he proceeded to operate the said gasoline engine for the purpose of pumping water for the defendant company, as was the duty of the said station agent and himself to do; that upon entry of the room at the pumping station, wherein the said gasoline engine was operated, and upon attempting to start the said engine, it suddenly exploded and enveloped the said Terry Sirman in a flame of fire, from which he died; that in the large well from which the water was pumped, and suspended above the water and beneath the engine, was a large gasoline tank, which was hidden from the view of the deceased; the said tank serving as a reservoir for the storage of gasoline, and was connected with a small tank situated above the floor and above the gasoline engine, which small tank furnished the gasoline for immediate use in the operation of said engine by means of an unprotected pipe extending to the engine, where the gasoline was ignited by means of an ordinary burner, to which a match was applied when it was desired to start the engine for the purpose of pumping water."

It is further alleged that this reservoir, in which the gasoline was held, had, by reason of its age and long use, become defective, and a leak resulted, which caused the accumulation of a vapor, or highly explosive gas, in the small room where the engine was situated, and thus created a dangerous situation. The petition then proceeds: "That the said Terry Sirman, on said date, attempted to light the burner of said engine for the purpose of operating same, and that in said attempt there was produced a violent explosion, with a sudden and dangerous flame, which burned the said Terry Sirman, thereby causing his death; that gasoline, used as a fuel for the operation of said engine, is a gaseous and highly combustible substance, and required the exercise of care and prudence and caution in its use and confinement; that it was the duty of the defendant company to exercise ordinary care to provide for its employés, servants, agents, and representatives a safe place, safe machinery, safe reservoir, pipes and tanks, tools and appliances with which to operate its pumping station." The negligence charged is, in substance, the failure of the appellant to use proper care to remedy this alleged defective condition, and its failure to adopt a safer and better method for starting the engine.

Appellant answered by a general demurrer and a general denial, and also pleaded settlement in full for all the damages claimed. In addition to this, appellant further pleaded that Terry Sirman was a volunteer in undertaking to operate the engine at the time he was injured, and that it owed him no duty to keep the premises in a safe condition. The appellee filed a supplemental petition setting forth facts impeaching the fairness of the settlement, and in avoidance of its legal effect. A trial before a jury resulted in a verdict for the appellee for the sum of $8,500, less $150 previously paid at the time the alleged settlement was made.

We shall pass over those assignments of error which assail the rulings of the court relative to the issues presented by the plea of settlement and of contributory negligence, and consider those which involve the right of the appellee to recover any sum under the pleadings and the evidence. The appellant asked for a peremptory charge instructing the jury to return a verdict for the defendant. This was refused, and the court in his main charge submitted the plaintiff's right to recover in the following manner: "Now, if you believe from the evidence, by a preponderance thereof, that, at the time and place stated in plaintiff's petition, the deceased, Terry Sirman, was acting as a volunteer with the consent of the defendant's agent, to help and assist said agent in the running of the pumping station owned by the defendant, and if you believe that, in pursuit of said service, he went into the room of the pumping station and proceeded to light the gasoline engine for the purpose of operating the pump

at defendant's water station, and that he was exercising ordinary care in the discharge of such service, and if you further believe that the defendant had negligently permitted the gasoline tank, pipe, and reservoir situated in said pumping station to become old, worn, and defective, so as to permit gasoline to escape therefrom, and which produced within said pumping room a gaseous condition, highly combustible and explosive in character, and that such condition was not known to deceased, and by the exercise of ordinary care could not have been known to him, and if you further believe that he struck a light in attempting to start the gasoline engine, and that he exercised ordinary care in so doing, if he did so, thereby causing an explosion and fire which resulted in the death of the said Terry Sirman, and that the negligence of defendant, if any you find, was the direct and proximate cause of said explosion and consequent death, then you will find for plaintiff, Mrs. J. T. Sirman."

[1, 2] There is little, if any, conflict in the testimony concerning the facts relating to the injury, and the material circumstances connected with it. At the time stated in the petition, the appellant had a depot at the town of Ashland, which was in charge of an agent named Hollinshed. A few yards distant from the building so used was the pump station referred to in the original petition. It was a part of the agent's duty to operate this pump, whenever necessary, for the purpose of supplying the tank with water. It is to be inferred from the record that this was done every day. Hollinshed boarded with the appellee, and was often with her son prior to his death; in fact, they appear to have been on terms of intimate friendship. On August 23, 1911, at about 12:30 o'clock p. m., Hollinshed and Sirman were walking together, going in the direction of the pump, and also of the place where Sirman was employed to work. They had reached a point between the depot building and the pump station, when Hollinshed was called back by some one who wanted freight from the depot. He was at the time on his way to the pump for the purpose of starting it. When he turned back, he said nothing to Sirman about the latter starting the pump for him, nor did Sirman say anything to Hollinshed that indicated that he intended to do so. In a very few minutes after they separated, the explosion occurred which caused the injuries that resulted in the death of Sirman. According to Sirman's ante-mortem statement, after Hollinshed turned back on the occasion mentioned, he (Sirman) concluded that he would go on to the pump station and start the engine himself. He went inside of the pump house, poured some oil or gasoline in the receptacle provided for that purpose, struck a match to light the oil or gasoline, and the explosion occurred. The evidence indicates that this result-

ed from the accumulation of gas or vapor, due probably to a leak in the pipe or some portion of the reservoir which contained the gasoline. The day was very warm, and the building presumably had been closed. The evidence is sufficient to justify the conclusion that the explosive gas, which caused Sirman's injuries, was due to a failure, on the part of the appellant or its agents, to remedy some defective conditions existing about the reservoir or the pipes containing the gasoline. Sirman was a youth about 15 or 16 years of age, and, at the time of the accident, was employed by R. E. Roe in loading lumber on cars just across the railway track from this pump station, and had been so engaged for some time prior to that date. Several weeks before the accident, there had been a conversation between Sirman and Hollinshed about the latter teaching Sirman telegraphy; and, as a return for this service, Sirman proposed to aid Hollinshed about the depot. Nothing, however, seems to have been done in carrying any such agreement into effect. There is no evidence that Hollinshed was teaching Sirman, or that Sirman was under any obligation to assist Hollinshed in the performance of any duties around the depot. On as many as a half dozen occasions prior to the accident, Sirman had gone with Hollinshed to the pump station for the purpose of starting the engine, and would sometimes assist Hollinshed in doing this, or would do it alone under Hollinshed's direction. One witness testified that he had seen Sirman start the pump when Hollinshed was not present, and had also seen him stop it, when the tank was filled and Hollinshed was absent. Hollinshed testified that he had never known of deceased starting the pump in his absence. There is no evidence that any other employé or agent of the appellant knew of any services having been performed by Sirman in and around the pump or the depot. The evidence does not sustain the pleadings, which allege the existence of a contract between Sirman and Hollinshed, by which the latter undertook to teach Sirman telegraphy, and Sirman in return agreed to perform some services in assisting Hollinshed in and around the depot and the pump station. Nor does it warrant a finding that the relation of employer and employé in any of its forms existed between the appellant and Sirman. On the contrary, the facts show that Sirman undertook to start the pump on the occasion of the accident of his own accord, and without notifying Hollinshed or any other person of his purpose.

Evidently the jury, following the court's instruction, as embodied in the charge quoted, based its verdict upon the conclusion that Sirman acted, as he did, with the tacit consent of Hollinshed, and that appellant owed him the duty to exercise proper care to keep the premises in a safe condition for him to perform that work. The charge, we think,

was clearly wrong as applied to the facts of this case.

[3] Judging from the argument and brief of counsel for appellee, the court undertook to apply, in his instructions to the jury, a rule of law, as stated by the following extract from Street on Personal Injuries: "If there were no emergency, and the assistance was merely called for by a subordinate employé as a matter of convenience, yet if the assistance thus undertaken to be rendered was of a nature beneficial to the master, though it was not intended payment should be made, but only that the service should be rendered in a friendly spirit, we incline to the opinion that the law would imply the master's acquiescence, and that such person should be considered a volunteer, entitled, as such, to the protection due a servant. In either case, we think the volunteer would accept the service, subject to all the risks that would be assumed by a servant regularly employed to render it, not only ordinary risks of the service, but risks arising from defaults of the master, which must have been known to one so regularly employed. The views first indicated in this paragraph are supported by the cases of Mayton v. T. & Pa. Ry., and Hall v. T. & Pa. Ry., and cases there cited." See Street on Personal Injuries, p. 190.

The first case referred to by the author is found in 63 Tex. 77, 51 Am. Rep. 637. It was a suit for damages for personal injuries, and the appeal was from a judgment sustaining a general demurrer to the plaintiff's petition. In disposing of the issue, the court said: "The petition lacks an element which is essential to all good pleading—'certainty to a common intent.' It does not clearly inform the defendant of the issue which is to be met. On this account, the demurrer was properly sustained. So far as we can see, the plaintiff was a mere volunteer, attempting, it may be, to assist the servants of the railroad company; but there is nothing from which we can infer the liability of the company for the injury which he sustained. See 2 Thompson on Negligence, p. 1045; Wood's Master and Servant, § 455, pp. 907–910, and notes; Pierce on Railroads, p. 370, and note 6. 'Such a person,' says Wood, 'cannot stand in a better position than those with whom he associates himself, in respect to the master's liability.'" The second case referred to is found in 35 S. W. 321, and is an opinion rendered by the Court of Civil Appeals for the Second District. It was a suit by the plaintiff in the case against the railway company for personal injuries sustained while crossing a bridge constructed by the company over its right of way. The evidence showed that the bridge had been put there by the railway company for the special benefit of a certain individual in the neighborhood, and his family and employés. It was held that the plaintiff, being one of those for whose benefit the bridge was built, was

there, upon the occasion of his injury, by an implied invitation from the railway company, and it owed him the duty to exercise proper care to keep it in a safe condition. Neither of these cases supports so comprehensive a statement of the principle of law sought to be applied in this case as that insisted on by counsel for appellee.

An authority which more fully states the rule is that of Eason v. S. & E. T. Ry. Co., 65 Tex. 577, 57 Am. Rep. 606. Eason sued the railway company for personal injuries received while attempting to couple some cars. A demurrer was sustained to his petition in the trial court, and he appealed. It may be gathered, from the meager statement made of the facts in the report of the case, that Eason was an employe of Carlyle & Snelling, a firm who owned a mill situated on the line of the defendant's railway. While cars were being placed in position for the convenience of the owners of this mill in loading lumber, the conductor of the train requested Eason to make a coupling. Eason was at the time apparently waiting for this work to be finished, in order that he might load the cars for his employers. In attempting to make the coupling, Eason was injured. In reversing the case, Chief Justice Willie said: "The principle upon which a recovery is allowed is this: The injured person is not a volunteer, but engaged at the request or with the permission of the railway's agents in a transaction of interest as well to himself or his master as to the railroad company; and this entitles him to the same protection against the negligence of the company's servants as if he were, at the time, attending to his own private affairs. Though performing a service beneficial to both, he is doing so in his own behalf, and not as a servant of the company. Their request or acquiescence gives him the right to perform the service. The fact that he acts in his own behalf, however beneficial his labor may be to the company, gives him the right to be protected against the negligence of the company's servants. The act done by him should be a prudent and reasonable one, and 'not a wrongful intermeddling with business in which he had no concern.'" A similar principle is announced in Welch v. Maine Central Ry. Co., 86 Me. 552, 30 Atl. 116, 25 L. R. A. 658. After citing with approval the Eason Case and some others, the judge, rendering the opinion in that case, said: "Mr. Thompson in his work on Negligence (volume 2, p. 1045) says that care must be taken to distinguish the case of a mere volunteer from that of one assisting the servants of another at their request, for the purpose of expediting his own business or that of his master; for in such a case he will stand in the relation of a fellow servant to them, and, if he is injured by their negligence, the doctrine of respondeat superior will apply and their master will be responsible." In another portion of

the opinion, the court said: "Our decision goes no further than to hold that the persons having the charge of freight may allow the servants of the consignee to remove it from the cars, and that the latter, while so engaged, have a right to be protected against the negligence of the former; in other words, that in such cases the rule of respondeat superior applies. Such a doctrine seems to be well sustained by authority, and we believe it to be sound." Other cases are referred to by both the appellant and the appellee; but these sufficiently state the principle of law relied on to sustain the judgment in this case.

It will be observed that, in the cases discussed, the negligence for which the employer was held responsible was attributable to the dereliction of an employé in doing, or in failing to do, some act, in the line of his duty, which constituted a wrong, for which an injured licensee might invoke the doctrine of respondeat superior and hold the principal liable. None of them go so far as to hold the employer liable to such persons for a failure to discharge that primary duty and obligation which he owed only to those whom he had employed in his service.

[4] The negligence alleged, and that disclosed by the evidence in this case, if there be any shown, was the failure of the master to furnish a safe place for the performance of the duties which he required of his servants. That duty, while not a part of the stipulations usually embraced in contracts of employment, is nevertheless implied in all such agreements, and is treated in law as incidental to the relation thus created.

[5] So strongly is that principle established that the employé, while in the performance of his duties under the terms of his contract, has a right to assume that the employer has discharged this primary obligation, except when he knows that it has not been done, or in the exercise of ordinary circumspection might have known it.

[6] That duty, however, is due only to those persons who sustain toward the owner or employer those contractual relations. It grows out of the contract made by the employer himself, or through some authorized subordinate with another for the performance of some service.

[7] Hence, one who seeks to recover damages for a breach of that duty assumes the burden of proving that the relationship of master and servant, or of employer and employé, existed at the time of the injury. The employer, being responsible for the acts of his employés, as well as to them for the failure to perform the duties implied in his contract and exacted by law, is entitled to select those to whom he shall sustain such obligations, and for whose conduct he shall be held responsible.

[8] Mr. Thompson in his work on Negligence, vol. 4, § 4680, thus states the rule applicable to conditions like the present: "A person who volunteers to assist the servant of another, without being employed so to do by that other, is deemed to assume all the ordinary risks incident to the situation. His position is that of a volunteer, and is analogous to that of a trespasser or bare licensee. He takes things as he finds them, and in case of being injured, unless the injury occurs under such circumstances as to create a liability if he were regarded as a trespasser, intruder, or bare licensee, he cannot recover damages from the master of the servant, whom he has volunteered to assist." Labatt in his work on Master and Servant, vol. 2, § 629, says: "In numerous cases, the plea set up has been that, at the time of the accident in suit, the injured person was doing work which he had not been authorized by the defendant or his agent to undertake. If such unauthorized action is established, it is manifest that, in respect to the work thus done, the relation of master and servant did not exist between the person for whom it was done and the person who was doing it, and that the former did not owe the latter any of those special duties which are deemed to be incidental to that relation. The workman, under the supposed circumstances, occupies a position which is virtually, if not precisely, that of a trespasser or licensee, and has probably no right of action except in cases where he has been wantonly injured by the defendant or his servant." As supporting the text, the notes contain references to a collection of cases which, so far as we have been able to ascertain, sustain the proposition announced.

[9] It seems to be the settled law that, when a servant employed in one line of work voluntarily undertakes to perform services for his master in a different department, he assumes all the risks that attend a bare licensee, notwithstanding what he is doing may result in benefit to his employer. Werner v. Trautwein et al., 25 Tex. Civ. App. 608, 61 S. W. 447; 4 Thompson on Negligence, § 4681; 2 Labatt on Master and Servant, § 630 et seq. If an employé who undertakes to serve his master in a department or line of service, different from that which his contract bound him to perform, is not entitled to be protected by the legal duty of the master to furnish a safe place, there is equally as good a reason for denying the application of that principle to a stranger who seeks to obtrude himself into the service of another.

[10] An employé may in some cases confer upon a stranger the privilege of entering upon the premises of his employer, and thus confer upon such stranger the rights of a licensee; but, without authority so to do, he has no right to clothe a stranger with that protection which can only arise from a contract of employment.

We think the charge given the jury in this case was based upon an erroneous proposi-

tion of law. Not only do we think the charge was erroneous, but we feel constrained to hold that the facts themselves show no grounds for a recovery. If the evidence indicated that, by an amendment of the pleadings, a different case might be presented, which would disclose liability we should feel inclined to remand the case in order that this might be done. But under the undisputed evidence, if it be accepted as true, no case can be made that would authorize a recovery.

For that reason we shall reverse the judgment of the court below, and here render judgment in favor of the appellant.