ELLA DODGE, ADMINISTRATRIX OF THE ESTATE OF J. W. DODGE, DECEASED, Appellant, v. CHICAGO, GREAT WESTERN RAILROAD COMPANY, Appellee.

Railroads: LIABILITY FOR EMPLOYEE'S DEATH: FEDERAL SAFETY APPLIANCE ACT: APPLICATION. Plaintiff's decedent, a freight conductor, picked up a car enroute which was in bad order, attaching it to the rear of his train. He also fastened to the car a chain which had been used for attaching it to another car, as a convenient method of carring the same with his train. Upon reaching the end of his run decedent left his train, registered and for the purpose of riding to his home boarded the engine of another train going out on the same track over which his train had come in. The engine on which he was riding was derailed by a portion of the chain which had been attached to the car brought in by him, resulting in his injury and death. *Held*, that as decedent had finished his run and was not then engaged in interstate commerce, and as the bad order car did not contribute to the accident the Federal Safety Appliance Act had no application, and that defendant was not liable thereunder for his death.

Same: MASTER AND SERVANT: EXISTENCE OF RELATION: LIABILITY OF MASTER. To create a liability by an employer for injury to a servant, the relation of master and servant must have existed at the time of the injury and the injury must have been received in connection with some service being rendered while in the performance of duty, and as the result of a failure of some duty on the part of the master, or of those for whose acts he was responsible.

Where plaintiff's decedent had brought his train to the end of his run, and he had registered and was on his way home, riding the engine of another train for his own personal convenience, the relation of master and servant did not exist and the master was not liable for his injury in such circumstances.

Same: CARRIER AND PASSENGER: RELATION: EVIDENCE. One may be a passenger though riding upon a freight train, if the train is used for that purpose; but the relation of carrier and passenger as between a railway company and an employee rests upon contract, either inherent in the contract of employment or by an independent agreement for his transportation. The mere existence of a custom of employees to ride from the yards of the company

to their homes at the close of work will not alone establish the relation.

**Same:** INJURY TO LICENSEE: REQUIRED CARE. Where an employee of
4   a railway company has permission as a licensee to ride upon a
train when not engaged in his employment, he exercises the privi-
lege at his own risk of injury from obvious dangers, and the com-
pany owes him no duty except the exercise of ordinary care to
prevent injuring him upon discovering his peril.

*Appeal from Polk District Court.*—HON. C. A. DUDLEY, Judge.

TUESDAY, MARCH 24, 1914.

ACTION for damages resulting in death, based upon al-
leged negligence of the defendant. From a directed verdict
for defendant, the plaintiff appeals.—*Affirmed.*

*Parsons & Mills,* for appellant.

*Carr, Carr & Evans,* for appellee.

WITHROW, J.—I. On the 22d of November, 1911, plain-
tiff's decedent met his death by accident, he at the time being
a conductor in the employ of the defendant company. On
that day he had been in charge of train No. 83, being a freight
train of eighteen or twenty cars which had been made up
at Marshalltown. While on the way from that city to Des
Moines, two cars were taken up at Berwick, one of them
being in bad order, and which was being taken to South Des
Moines for the purpose of being repaired. As described by
one witness, who was at the time a brakeman on train No.
83, the drawbar was out of the east end of the bad order car,
and they placed it behind the caboose to take it into Des
Moines. When picked up it was fastened to another car by
a chain, and, after putting the two cars into the train they
fastened the chain up. One end was hooked over the other
part and was wired to it, and that fastened the link up with

the brake rod. The train thus proceeded towards Des Moines, and, when reaching the South Des Moines yard office, decedent left it and went into the office to register his arrival.

It was conceded that at the time train No. 83 was partially composed of cars which had been brought from a point outside the state, and destined to points in Iowa or beyond.

Train No. 62 of the defendant was made up and ready to start on its trip, and awaited the arrival of train No. 83, the one brought in by the deceased. No. 62 was intended to pass over the track on which No. 83 was to come into Des Moines. It was made up of from twenty-five to thirty cars, and had two engines. Upon the arrival of No. 83, some parties, among them Mr. Dodge, the deceased, got on the head engine to ride up to the yards. The train No. 62 proceeded about two blocks to the east, and then left the track and partly overturned. As it left the rails the engine proper turned to the right, thereby lessening the space between the right side and the tender, and the decedent, who was standing at that place, was crushed and killed. Investigation being made as to the probable cause of the accident, a piece of chain was found under the tank of the second engine, and it is the claim of the plaintiff that the derailment was caused by it, and that it was a piece of the chain which had been on the bad order car, and such the evidence tends to show.

The chain which was on the rear or east end of the bad order car on No. 83 was about twelve feet in length. It was not used as a means of coupling for bringing the car into Des Moines, but, as testified by the brakeman, he, with Mr. Dodge, the decedent, fastened it up and wired it as a convenient means of carrying it. After the accident, upon examination, about three feet of the chain was yet attached to the car. The chain found under the tender of the second engine on No. 62 was of the same kind. The brakeman testified that the chain was still on the rear of the car when he closed the switch at Ready, a point in East Des Moines. He also testified that the employees of the Great Western ride the trains out from South

Des Moines to their various homes, and that he had heard no protests or objections to such being done on freight trains, and that he had known of such being done for sixteen years.

It was conceded that train No. 62 had cars destined for points beyond Iowa, and that the defendant was operating its line of railway from Chicago, Ill., through and across Iowa to points in Missouri and Minnesota.

II. Plaintiff's cause of action was presented in three counts. The first charges liability under the federal Employers' Liability Act (Act April 22, 1908, chapter 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, page 1322]), which has for its object the protection of employees engaged in interstate commerce. The second count charges negligence in moving the bad order car from Berwick to Des Moines, contrary to the provisions of the Safety Appliance Act (Act March 2, 1893, chapter 196, 27 Stat. 531 [U. S. Comp. St. 1901, page 3174]); and the third count rests upon the claim that decedent was at the time a passenger on train No. 62.

Under the first count, negligence is charged in the fact that the servants of the defendant failed to use reasonable effort to protect the deceased after they knew that he was placed in a position of peril by reason of the derailing of the engine, and prior to the time it left the track so as to overturn; that the engineer negligently ran his engine sixty or seventy feet after it had left the rails; that the engineer of the second engine negligently pushed the derailed engine after it was so derailed.

The claim of liability under the second count is based upon the charge that the engine was overturned by reason of the negligence and unlawful act of the defendant in moving from Berwick to Des Moines a car not at the time properly equipped with automatic safety device. The answer was a general denial, with the particular averment that the accident which caused the death of the decedent was in no manner connected with the movement or handling of the defective car from Berwick to Des Moines, and the defective coupling

was not in use at any time in the movement of the car between those stations. The negligence of the decedent is also pleaded. There was a trial to a jury, and, upon the conclusion of the evidence, a verdict was directed for the defendant, and the plaintiff appeals. We will consider the questions raised by the appeal in the order of their presentation.

III. It is first urged that, under the federal Safety Appliance Act, the movement of the bad order car between the two stations was at the risk of the defendant, and that it is under said act liable for such accidents as arise therefrom or are connected therewith. The provisions of the act, as bearing upon the claim presented by appellant, are as follows:

1. RAILROADS: liability for employee's death: federal Safety Appliance Act: application.

And such movement or hauling of such car shall be at the sole risk of the carrier, and nothing in this section shall be construed to relieve such carrier from liability in any remedial action for the death or injury of any railroad employee caused to such employee by reason of or in connection with the movement or hauling of such car with equipment which is defective or insecure, or which is not maintained in accordance with the requirements of this act, and the other acts herein referred to; and nothing in this proviso shall be construed to permit the hauling of defective cars by means of chains, instead of drawbars, in revenue trains or in association with other cars that are commercially used, unless such defective cars contain live stock or 'perishable freight.'

Under the facts appearing in this record, and which are not in dispute, we are not able to make that application of the statute upon which appellant insists. The decedent was not, at the time of the accident which resulted in his death, engaged in interstate commerce. His service in that connection had ended upon his arrival at the station, when he left his train and registered; and the subsequent act of his in boarding the head engine of another train, with the operation of which he was in no way connected, was entirely without relation to his previous service.

In *Pederson v. D., L. & W. R. Co.,* 197 Fed. 537 (117 C. C. A. 33), it was held that the act applies only to injuries suffered by employees while the carrier is engaged in interstate transportation, and to such employees only as have a real and substantial connection with such act. Based upon the same idea is the holding in *Mondou v. N. Y., N. H. & H. R. Co.,* 223 U. S. 1 (32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44). It should be observed in this connection that, while the bad order car had a defective coupling, such defect in no way entered into the situation, other than because of it the car was brought in for repairs. No use was made of the defective coupling as a means of attaching it to the train. It was on the rear end of the car, which was at the end of the train. The chain, which it may be assumed for the purpose of this hearing caused the derailment of the locomotive, served no purpose in bringing the car from Berwick to Des Moines, but was merely fastened at its rear as a convenient means of caring for it. The chain itself was not a defective appliance, but was a means only, when in use, to cover emergencies arising from defects in other parts.

The accident did not result from any causal connection with the defective condition of the car, but from a cause which was unrelated to it, excepting that the chain had previously been used to couple that car to another one, but which at the time of the movement of the car was not so used. Under these facts, which are not in dispute, we think the provisions of the Safety Appliance Act are without application.

IV. That act not governing in the present case, it follows that the charge of negligence based upon it cannot be sustained; and this, with the conclusion stated as to the facts, renders unnecessary a consideration of the averments of negligence, under the federal Employers' Liability Act, further than the statement that it appears without dispute in the record that the chain was attached to the rear of the car by the brakeman and the conductor, the decedent, and under the

direction of the latter; and, if it was insecurely fastened, such was from the act of no one but himself.

V. It is claimed that the decedent, when he was upon the locomotive of train No. 62, was either an employee or a passenger, and in either view was entitled to the protection due to such. He was not an employee, for 2. SAME: master and servant: the service in which he had been engaged had existence of re- lation: liability ended, and he had gone upon the locomotive of master. to ride towards his home, or for some purpose entirely without connection with the operation of train No. 62 or with any other service by him to the company.

To create liability by an employer for injuries to an employee, the relation of master and servant must have existed at the time of the injury, and it must have been received in connection with some service being rendered by him, and while in the line of his duty, and from some failure of duty on the part of the master, or those for whose negligent acts he would be liable. *Dickinson v. West End Street R. Co.,* 177 Mass. 365 (59 N. E. 60, 52 L. R. A. 326, 83 Am. St. Rep. 284).

VI. Was the decedent at the time a passenger on train No. 62? That was not a passenger train, but such would not 3. SAME: carrier be controlling if it had in fact been permitted and passenger: to be used for passenger service. But such relation: evi- dence. service is based upon a relation between the carrier and the person claiming to be a passenger. *Fitzgibbon v. C. & N. W. R.,* 108 Iowa, 618.

It appears in the evidence, from the testimony of the brakeman, that he had known of the custom of employees boarding the engines of outgoing trains to ride to their homes, after their own service had ended; but, in the absence of further proof showing that such was because of and a part of the contract of employment between the company and its employees, it would not show the relation of carrier and passenger.

As holding that such relation rests upon a contract, either inherent in the contract of employment or an independent agreement for transportation for him, see also, *Doyle v. Fitchberg R. R. Co.*, 162 Mass. 66 (37 N. E. 770, 25 L. R. A. 157, 44 Am. St. Rep. 335); *McNulty v. Railroad Co.*, 182 Pa. 479 (38 Atl. 524, 38 L. R. A. 376, 61 Am. St. Rep. 721).

VII. We conclude that the decedent, at the time of the accident which resulted in his death, was neither an employee nor a passenger, as such terms are used in fixing liability.

4. SAME: injury to licensee: required care.

Assuming that he, with others, had by permission enjoyed the privilege of riding upon the engine towards his home, after his own service had ended, he was but a licensee. Being such, and giving to the evidence all the weight and force that can be properly claimed for it, the standard of duty towards him for his protection would be that the defendant, thus permitting the decedent to ride, would be held only to the exercise of ordinary care, and that the licensee exercises the privilege at his own risk of obvious or patent dangers (29 Cyc. 450), and under such conditions the defendant owed him no active duty excepting upon the discovery of his danger. *Richards v. C., St. P. & K. C. Ry. Co.*, 81 Iowa, 426; *Rutherford v. Railway Co.*, 142 Iowa, 744.

VIII. The charge that the engineer was negligent in failing to use proper efforts to stop his engine after it left the rails is without support in the evidence; and there is no dispute as to the fact testified to by him that, upon discovering the derailment, he immediately applied the emergency brakes in endeavoring to stop the movement of his engine; nor is there any proof tending to show negligence on the part of the second engineer in, as charged, pushing the head engine forward after knowing that it had left the track. From the whole record, we find no facts establishing any negligence on the part of those in charge of or operating train No. 62, as charged, much less in any manner creating

liability to the estáte of decedent, arising out of its duty to him as a licensee.

The ruling of the trial court in directing a verdict was correct, and the judgment entered by it is—*Affirmed.*

LADD, C. J., and DEEMER and GAYNOR, JJ., concur.