WILLIAM BYRAM, Appellee, v. ILLINOIS CENTRAL RAILROAD
COMPANY, Appellant.

MASTER AND SERVANT: The Relation—Statutory Regulation—
1  Federal Employers' Liability Act—Operating Turntable.  A rail-
road employee, in moving an engine upon a turntable preparatory
to attaching it to an interstate commerce train, is engaged in
interstate commerce, and the law governing an injury received is
furnished by the Federal Employers' Liability Act. (35 Stat. at
Large, ch. 149, p. 65.)

MASTER AND SERVANT: Assumption of Risk—Federal Employers'
2  Liability Act.  An employee engaged in interstate commerce does
not, under the Federal Employers' Liability Act, assume the risk
arising out of the negligence of another employee.

MASTER AND SERVANT: Contributory Negligence—Federal Em-
3  ployers' Liability Act.  The trial court must not, of course, in an
action under the Federal Employers' Liability Act, tell the jury
that plaintiff's contributory negligence will defeat the action.

MASTER AND SERVANT: Scope of Employment—Fireman Operat-
4  ing Turntable.  An employee who voluntarily undertakes the per-
formance of a duty for which he was not employed acts at his
peril.

PRINCIPLE APPLIED: The sole duty of a fireman, at the
end of an interstate run, was to inspect his engine, just previous
to the return trip.  This inspection was often made in the round-
house; but never, except on one possible occasion, had he and the
engineer attempted to take the engine out of the roundhouse or
to use the turntable, as to all of which they had no duty.  It was
the sole duty of the hostler and helpers to care for the engine and
prepare it for the return trip, including the turning of it on the
turntable.  On the day in question, the fireman inspected the en-
gine in the roundhouse, but the hostler ran it out and upon the
turntable, the fireman following on foot.  The hostler had no au-
thority over the fireman, but asked him to ''lock'' the turntable.
He attempted to obey; but the hostler's helper, who could readily
have done the ''locking'' himself, negligently started the turn-

table, and the fireman was injured. The hostler had no authority to employ men or call assistance. The fireman pleaded, *but did not prove*, that he was called to "lock" the turntable under an emergency caused by a general strike on the road. A rule of the company required all employees to protect the property of the company when in danger. But no property was at any time in danger. It seems this was the first time the hostler had ever had, or requested, such assistance. *Held*, the fireman was outside the scope of his employment and could not recover.

**MASTER AND SERVANT:** Authority of Servant—Employing Assistance—Engine Hostler. An engine hostler by virtue of his position has no implied authority to call assistance to his aid, in the absence of an emergency.

**MASTER AND SERVANT:** Scope of Employment—Federal Employers' Liability Act—Engine Fireman. The Federal Employers' Liability Act does not abrogate the rule that the servant, in order to recover, must be acting *in the line of his employment* at the time of his injury.

*Appeal from Black Hawk District Court.*—HON. CHARLES W. MULLAN, Judge.

FRIDAY, NOVEMBER 26, 1915.

ACTION to recover damages for personal injuries received by plaintiff upon a turntable belonging to the defendant company. Plaintiff alleged that he was injured while engaged in interstate commerce, the turntable being used therein, and that the injury was due to the fault of a fellow servant in prematurely starting the turntable. The answer was practically a general denial. The case was tried to a jury, resulting in a verdict for plaintiff in the sum of $3,000, which the trial court reduced to the sum of $1,750, and for the latter amount rendered judgment. Defendant appeals.—*Reversed and Remanded.*

*G. W. Dawson* and *Helsell & Helsell* (*Blewett Lee* and *W. S. Horton,* on the briefs), for appellant.

*J. T. Sullivan,* for appellee.

DEEMER, C. J.—Plaintiff was a fireman on one of defendant's engines, running between Dubuque, Iowa, and Freeport, Illinois. The engine was engaged in interstate commerce and plaintiff was employed therein. On the day of the accident, he came into Dubuque on his engine, arriving there at about 10:30 A. M. He left the engine with the engineer, upon a side track, where, according to rule and custom of the company, it was to be taken in charge by a hostler of the roundhouse. He had no further duty with reference to his engine except to return to it in time to take it out on its next trip, and he expected to find it on a track away from the turntable, ready to go on its journey. It was the duty of the hostler, and of repair and roundhouse men, to take the engine, where it was left by the engineer and fireman, to clean and repair it when necessary, to have it filled with water and placed upon a track, ready to start on its next trip. This also included the turning of the engine upon a table, when necessary, and the placing thereof upon the proper track, ready to leave on its journey. The engineer and fireman were expected to return to the engine about 50 minutes before it was time to go on its next run, to see that everything was supplied which was required and that it was ready to start. They often found the engine in the roundhouse and there looked it over; but, save in a single instance (and even this is in doubt), they never undertook, nor was it their duty, to take or to assist in taking the engine from the roundhouse or to use the turntable to head it in the proper direction or to place it upon the track where it was to be received by the engineer and fireman. On the day of the accident, plaintiff went to the roundhouse, got on the engine and saw that everything was in readiness; when the hostler who was in charge of the roundhouse got upon the engine and ran it onto the turntable. Before the engine started, plaintiff left it in the roundhouse, but followed it out onto the turntable; and when it had been placed thereon, someone, doubtless the hostler, or his helper, asked him to latch or lock the turntable. Pursuant to this request, plain-

tiff went to the latch, a thing he had never done before during his seven years of employment, and finding it difficult to make the connection, got his hand in such a position that, when the table was moved for some cause, his little finger was caught and injured so that it had to be amputated. The wound became infected and two other amputations were rendered necessary. There was testimony to the effect that one of the hostler's helpers, in charge of the machinery which turned the table, was notified by plaintiff not to move it, as he was going to latch it; and that, while plaintiff was attempting to latch the table, this employee carelessly and negligently, and without warning, applied the air which controlled the table, causing it to move, with the result heretofore stated.

I. The negligence charged in the petition is that of this assistant to the hostler, and there was enough testimony to establish this negligence.     Under the liberal construction

**1. MASTER AND SERVANT: the relation: statutory regulation: Federal Employers' Liability Act: operating turntable.** placed upon the Federal Employers' Liability Act (35 Stat. at Large, Part I, p. 65), by the Supreme Court of the United States, followed as of course by the state courts, it is clear that the moving of the engine, preparatory to attaching it to cars to be run in interstate commerce, before making its run to Freeport, Illinois, was an act in interstate commerce, and the law of the case is furnished by the Federal Act. *North Carolina R. Co. v. Zachary*, 232 U. S. 248; *Pedersen v. Delaware, L. & W. R. Co.*, 229 U. S. 146; *St. Louis, S. F. & T. R. Co. v. Seale*, 229 U. S. 156; *Armbruster v. Chicago, R. I. & P. R. Co.*, 166 Iowa 155; *Winters v. Minneapolis & St. L. R. Co.* (Minn.), 148 N. W. 106.

II. It is also clear that the plaintiff did not assume the

**2. MASTER AND SERVANT: assumption of risk: Federal Employers' Liability Act.** risk arising out of the negligence of another employee; for this he could not anticipate or guard against. *Caverhill v. Boston & M. R. Co.*, (N. H.) 91 Atl. 917; *Norfolk & W. R. Co. v. Earnest*, 229 U. S. 114. Indeed, this rule is so well settled that no authority need have been cited in its support.

III. The question of plaintiff's contributory negligence was properly submitted by the court to the jury, under the rule of the Federal statute which, in substance, adopts the comparative negligence doctrine; and the trial court was not justified in telling the jury that plaintiff's contributory negligence, if shown, would defeat his action.

**3. MASTER AND SERVANT: contributory negligence: Federal Employers' Liability Act.**

IV. The real question in the case is whether or not plaintiff was injured while in the course of his employment as fireman, or was employed by defendant in interstate commerce at the time he received his injuries. He alleged in his petition that, because of a general strike on defendant's line, it was short of help in the roundhouse at this particular time, and that his was an emergent call to assist the hostler in the performance of his work; but he offered no testimony in support of these allegations. He also alleged that the hostler was short of help (which he did not prove) and that the hostler asked and directed him to latch the table and thus assist in getting the engine turned so that it might be run off on the proper track. He proved that he was requested by the hostler to latch the table; but he introduced no testimony showing, or tending to show, that the hostler had any authority to employ help or to call men to his assistance. He also relied upon a rule of the defendant company, reading as follows: "In case of danger to the company's property, employees must unite to protect it." But there is, as we read the record, no proof of any immediate danger to defendant's property. The engine had safely passed upon the turntable, had reached its proper position thereon and was stationary. It was not intended to move it until the table was latched, and the testimony showed there was no immediate danger even if the table were not latched, provided the engine was properly balanced. There was a helper present whose duty it was to apply the air which moved the table, and he could easily have stepped aside and done the latching. The engine was under proper control and,

**4. MASTER AND SERVANT: scope of employment: fireman operating turntable.**

when plaintiff went to the latch, the table was stationary and did not move, as plaintiff claims, until the helper negligently started it.

So that there is no proof of any emergency, no proof of lack of help, and no such proof as would have justified the plaintiff in going to the latch to protect the defendant's property; for it was not then in any danger. The testimony shows that neither the engineer nor the fireman had any duty to perform about the turntable or in the roundhouse, save to see that the engine was properly equipped and supplied by the roundhouse men. They left their engine upon a track outside the roundhouse and away from the turntable, where it was taken in charge by the hostler, by him run into the roundhouse and there cleaned, repaired and supplied by the roundhouse men. It was then brought out by the hostler and his helper, or helpers, placed upon the turntable, headed for the proper track, run onto this track, and there left, to be received by the engineer and his fireman. Under the terms of his employment, plaintiff had nothing to do with the management or control of the turntable or of the engine, until it was placed upon the proper track after it had been taken from the roundhouse and headed onto the proper track after leaving the turntable. If, then, plaintiff on his own motion undertook to assist with the turntable, he was a mere volunteer, to whom the defendant owed no duty save not to wantonly or willfully injure him; for he was not then engaged in his master's service. He relies, however, upon the rule before quoted, and upon an emergency created by the alleged strike, as hitherto stated, and also upon the direction given him by the hostler. The testimony shows, however, that the hostler had no authority or control over the plaintiff; that he (plaintiff) got his orders from the master mechanic or traveling engineer, and not from the hostler; and there was no testimony that the hostler had any authority, either express or implied, to call him (plaintiff) to his assistance. The case is no different than had the hostler called upon a mere stranger

to perform a like service. The rule in such cases is well understood. The employee, to come within the provisions of either the state law or the Federal act, must receive his injuries while in the course of his employment. If he voluntarily undertakes the performance of a duty for which he was not employed, he acts at his own peril and does not come within the terms of the act. See *Dodge v. Chicago, G. W. R. Co.*, 164 Iowa 627; *Sloan v. The Central Iowa R. Co.*, 62 Iowa 728; *Lindquist v. Crown Plaster Co.*, 139 Iowa 107; *Aga v. Harbach*, 127 Iowa 144 (4 Ann. Cases, 441 and extensive note). Cases from other states, upon facts quite similar to the one at bar, announce the same rules. See *Weeks v. Chesapeake & O. R. Co.*, (W. Va.) 69 S. E. 805; *Marshall & E. T. R. Co. v. Sirman*, (Tex.) 153 S. W. 401; *Derrickson's Adm'r v. Swann-Day Lumber Co.* (Ky.), 115 S. W. 191; *Houghton v. Pilkington*, (Eng.) 28 Ann. Cases 790, and learned note; *Pugmire v. Oregon Short Line R. Co.*, 33 Utah 27 (14 Ann. Cases 384, and learned note thereto); *Mellor v. Merchants' Mfg. Co.*, (Mass.) 5 'L. R. A. (O. S.) 792, and note; *Parent v. Parent Mfg. Co.* (N. H.), 47 Atl. 261; *McGill v. Maine & N. H. Granite Co.* (N. H.), 46 Atl. 684; *Barstow v. Old Colony R. Co.* (Mass.), 10 N. E. 255; *Southern Railway Co. v. Pope's Administrator*, 19 Ann. Cases 376, 133 Ky. 835 (this annotated case also has a valuable note to which reference is made); *Plumb v. Cobden Flour Co.*, (Eng.) 32 Ann. Cases 495, and cases cited in note. An accident arises out of the employment, where it is something the risk of which might have been contemplated by a reasonable person when entering the employment as incident to it. *Zabriskie v. Erie R. Co.* (N. J.), 88 Atl. 824. A master is not liable to a mere volunteer who undertakes without request and without his knowledge to assist a servant and who is injured in consequence thereof. This is fundamental law, and a mere hostler, in virtue of his position, has no implied authority to call assistance to his aid, in the absence of an emergency or a showing of implied authority.

5. MASTER AND SERVANT: authority of servant: employing assistance.

Counsel for appellee insists, however, that these well-settled rules have been changed by the Federal Employers' Liability Act; and that all that is necessary to be shown, to recover under that act, is that an employee was injured while engaged in interstate commerce, no matter whether in the course of his employment or not. The cases cited by him do not, as we read them, so hold. *Pedersen v. Delaware, L. & W. R. Co.*, 229 U. S. 146; *St. Louis, S. F. & T. R. Co. v. Seale*, 229 U. S. 156; *North Carolina R. Co. v. Zachary*, 232 U. S. 248, do not announce such a doctrine. The trial court, in its instructions, told the jury that plaintiff must show that he received the injuries while in the scope of his employment and in the line of the duty which he was employed to perform. This he did not do and, under this instruction, the verdict should have been for defendant. We may, in closing, say that there was no testimony showing, or tending to show, that it was the custom of firemen to assist in getting the engine from the roundhouse across the turntable and onto the track where the engineer and fireman were to receive it; and no testimony that defendant had any knowledge that the hostler had ever before requested assistance or that anyone on any other occasion had assisted the hostler or his helper.

6. MASTER AND SERVANT: scope of employment: Federal Employers' Liability Act: engine fireman.

While plaintiff made out a case on paper, he failed to prove it, and defendant's motion for a new trial should have been sustained on this ground. It follows that the judgment must be reversed and the cause remanded for a new trial.— *Reversed* and *Remanded.*

WEAVER, EVANS and PRESTON, JJ., concur.