Second District—April, 1917.        351

Day v. Chicago, Milwaukee & St. P. Ry. Co., 208 Ill. App. 351.

## S. E. Day, Administrator, Appellee, v. Chicago, Milwaukee & St. Paul Railway Company, Appellant.

### Gen. No. 6,358.

1. MASTER AND SERVANT, § 566*—*when no recovery proper under declaration in action for personal injuries under State law.* Recovery cannot be had, in an action to recover damages against an employer for the death of an employee, under a State law on pleadings counting only on that law when the evidence develops that the employee was employed in interstate commerce and was within the Federal Employers' Liability Act.

2. COMMERCE, § 4*—*when employee not engaged in interstate.* Where plaintiff's decedent was killed while employed by defendant railway company in constructing a new pipe line intended for future use in connection with the interstate commerce operation of defendant's road, he was not at the time of the injury employed in interstate commerce.

3. MASTER AND SERVANT, § 683*—*when evidence shows negligence of operator in failing to look out for employee in turntable pit.* Evidence *held* sufficient to warrant the finding that defendant's turntable pit had been so often used by defendant's employees for hiding their tools therein that defendant's turntable operator ought to have known that one of the defendant's employees might be there and should look out for him in turning the table, in an action to recover damages for the death of an employee while in the pit after his tools.

4. MASTER AND SERVANT, § 699*—*when evidence shows contributory negligence of employee entering turntable pit.* Evidence *held* sufficient to show that plaintiff's intestate was contributorily negligent in going into defendant's turntable pit after his tools stored therein without warning the turntable operator and without observing whether the operator's engine was signaling for adjustment of the table, in an action to recover damages for intestate's death,

5. WORKMEN'S COMPENSATION ACT, § 2*—*what is effect of contributory negligence of employee on liability of master.* Under the Workmen's Compensation Statute of 1911 (J. & A. ¶ 5449 *et seq.*), a negligent employer who has rejected the act is exonerated, by the contributory negligence of his employee, as to a proportional part of the damages corresponding to the amount of negligence attributable to the employee.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

6. DEATH, § 67*—*when verdict for damages excessive.* Judgment for $7,500 for damages on account of death of plaintiff's intestate while employed by defendant, *held* excessive in view of evidence showing the intestate was equally negligent with defendant, and remittitur of $3,750 allowed, since, under the Workmen's Compensation Act of 1911, the contributory negligence of the employee must be considered in reduction of damages in an action against an employer who rejected the act.

Appeal from the Circuit Court of Rock Island county; the Hon. FRANK D. RAMSAY, Judge, presiding. Heard in this court at the October term, 1916. Affirmed. Opinion filed April 19, 1917. Rehearing denied October 4, 1917.

WILLIAM A. MEESE and CHARLES S. ROBERTS, for appellant.

SEARLE & MARSHALL and ELY & BUSH, for appellee.

MR. JUSTICE CARNES. delivered the opinion of the court.

This is an appeal by the Chicago, Milwaukee & St. Paul Railway Company from a judgment of $7,500 for the death of Joseph Y. Clappison, its employee.

For more than a year prior to January 30, 1913, Clappison was in the employ of the appellant railway company as one of a gang or crew of bridge carpenters. Mike Harnet was their foreman, and they went from place to place on the company's line, as ordered, doing bridge, pile driving, carpenter and pipe line work. In the fall of 1912 they were ordered to Savanna, Illinois, where the company was enlarging its turntable connected with its roundhouse. The old turntable operated over a pit about 70 feet in diameter. The new one was to be 15 or 20 feet longer, which necessitated enlarging the pit by excavation at its circumference, and putting in a new concrete wall. This excavation was done by another crew, but to keep the turntable in operation while the work was in progress temporary woodwork was required at the outer edge, and this

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

work was done by Harnet's crew. It was completed about the 1st of January except some small repairs from time to time, and during the month of January, 1913, Harnet's crew was employed about the company's yards in other work. The turntable was operated by electricity and controlled by an employee of the company situated in a little building near the center. Engines were frequently run over it into and out of the stalls in the roundhouse. The operator usually got his signal to adjust the table for an engine coming out of the roundhouse by the ringing of that engine bell. While Harnet's crew was working regularly in the pit, the danger of injury to the men was appreciated, and the operator was instructed to look out for them and give warning before he started the machinery, which it seems he usually did by shouting to men in the pit. During all the time that this crew was working at Savanna they used a number of tools, the larger and heavier ones belonging to the company and the smaller ones to the men. Three cars were in the yards for their accommodation. They slept in one, ate in another, and the third was for the storage of tools. These cars were from time to time located at different points as the convenience of train operations required, sometimes half a mile to a mile from the place where the men were working. While Clappison with other members of his crew were engaged in the turntable work they kept some of their tools concealed at various places in the pit, and after that while at other work they kept tools concealed around the yards. The company had besides this car a house provided for keeping the workmen's tools, but sometimes it was convenient and perhaps necessary to store them in other places that the men of their own motion would select.

January 30, 1913, Clappison and one Peter O'Connell, a member of his crew, were working near this pit laying, as we understand it, a new pipe line in-

tended for future use in connection with the operation of the road. At about half-past 4 o'clock in the afternoon, Clappison was through with a tool that he was using and told O'Connell that he was going to put it in the pit. O'Connell said all right, or something to that effect, and Clappison went into the pit for that purpose and while there the table was turned to receive an engine coming out of the roundhouse, and in the operation he was caught and killed. The operator did not know of his presence until he heard his cry. The crew had not been working much in the pit for 3 or 4 weeks, and he had no reason to expect one of them there at work. He testified that he did not know they kept tools there. There is evidence that the engine bell rang as a signal for the operation to adjust the table, although in one part of the testimony the defendant, on cross-examination, asked one of plaintiff's witnesses what signal was given for the turning of the table at that time, and the court sustained plaintiff's objection to the question.

Peter O'Connell, with whom Clappison was working at the time, had been long in the employ of the company and was usually left by the foreman, Harnet, in charge of the men when he was absent. Harnet was himself in charge of his gang that day, and it does not appear that O'Connell had any authority at the time in question to direct Clappison, although it is no doubt true that because of his age and experience other members of the crew would naturally seek his advice in any questionable matter.

Clappison at the time was 49 years old, and left him surviving a widow and three minor children. This action was brought by his administrator. A declaration of four counts was filed, to which were added two amended counts. In some counts it was alleged that Clappison was employed in interstate commerce and a recovery sought under the Federal Employers' Liability Act. Others were framed on the theory that he

was not so employed and that the Workmen's Compensation Act of 1911, 1912 should apply, alleging that the defendant had rejected the provisions of that act. The general issue was pleaded. At the close of the evidence the court, of its own motion, directed the jury to disregard three counts in the declaration, leaving the issues as presented by the second and fourth original counts and the first additional count. This eliminated counts under the Federal Employers' Liability Act. No question is raised by either party as to this action of the court, except appellant insists that under the evidence deceased was employed in interstate commerce and therefore could not recover under the State law.

The trial court indicated by his rulings and instructions to the jury that in his opinion the Workmen's Compensation Act applied; and it appearing that the defendant had elected not to provide and pay compensation under that act it followed that it could not escape liability on the ground of assumed risk, or the negligence of a fellow-servant, or contributory negligence except, if contributory negligence of deceased was shown, the jury would be required to consider it in reduction of the amount of damages to be assessed. (J. & A. vol. 3, ¶ 5449.)

Appellee contends "it is necessary for defendant to raise issue of interstate commerce by special pleading," and cites several authorities in support of that contention. At one time there was conflict of authority, but it was settled that a recovery could not be had under a State law on pleadings counting only on that law when the evidence develops that the servant was employed in interstate commerce in *St. Louis, S. F. & T. Ry. Co. v. Seale*, 229 U. S. 156, and *Toledo, St. L. & W. R. Co. v. Slavin*, 236 U. S. 454, as we held in considering that question in *Dunlavy v. Chicago, B. & Q. R. Co.*, 200 Ill. App. 75, therefore, if the evidence in the present case shows that appellee's intestate was

356     Appellate Courts of Illinois.

Day v. Chicago, Milwaukee & St. P. Ry. Co., 208 Ill. App. 351.

employed in interstate commerce at the time of his injury there could be no recovery under the three counts of the declaration upon which the case was submitted, and the judgment would have to be reversed for that reason. *Chicago, R. I. & P. Ry. Co. v. Industrial Board of Illinois,* 273 Ill. 528. .

If the pipe line on which Clappison was at work was new, had never been used in interstate commerce, but was intended to be so used in the future, he was not then employed in interstate commerce. The answer would be different if he had been engaged in repairing a bridge, track, or pipe line that had been so used and was being repaired for future use. He was employed in interstate commerce when he was working on the turntable. It is admitted that appellant was engaged in interstate commerce. It is obvious that a servant cannot be employed in interstate commerce unless his master is at the time so engaged. It is equally plain that railway companies may be all the time engaged in interstate commerce with their employees so employed a part of the time, and a part of the time in intrastate commerce. A test is: Is the work in question a part of the interstate commerce in which the carrier is engaged? *Pedersen v. Delaware, L. & W. R. Co.,* 229 U. S. 146 [3 N. C. C. A. 779]. It was held in *Illinois Cent. R. Co. v. Behrens,* 233 U. S. 473 [10 N. C. C. A. 153], that a fireman who was killed while engaged in switching cars loaded with local freight was not employed in interstate commerce, and therefore the injury and death were not within the federal statute; that it was immaterial that he was expected upon the completion of that task to engage in another which would have been a part of interstate commerce; that "the true test is the nature of the work being done at the time of the injury." These federal cases were reviewed in *Chicago, R. I. & P. Ry. Co. v. Industrial Board of Illinois, supra,* and a watchman or private detective employed in the railroad

yards inspecting cars, some of which were and some were not used in interstate commerce, was not considered employed in interstate commerce in the absence of proof that the cars about which he was working contained interstate freight. In *Chicago, B. & Q. R. Co. v. Harrington*, 241 U. S. 177 [11 N. C. C. A. 992], the court held that a member of a railway yard switching crew engaged in switching loaded coal cars belonging to the company from a storage track to a coal shed, or chutes, was not then employed in interstate commerce within the meaning of the Federal Employers' Liability Act. It said: "The question is with respect to the employment of the decedent at the time of the injury (*Illinois Cent. R. Co. v. Behrens*, 233 U. S. 473 [10 N. C. C. A. 153]). It is not important whether he had previously been engaged in interstate commerce, or that it was contemplated that he would be so engaged after his immediate duty had been performed." The court cited *Shanks v. Delaware, L. & W. R. Co.*, 239 U. S. 556, 558, and quoted from that case that: "The true test of employment in such commerce in the sense intended is, Was the employee at the time of the injury engaged in interstate transportation, or in work so closely related to it as to be practically a part of it?" and cited *Delaware, L. & W. R. Co. v. Yurkonis*, 238 U. S. 439, holding that an employee of the carrier while he is mining coal in the carrier's colliery intended to be used by interstate locomotives, is not employed in interstate commerce. The court noted that *Great Northern Ry. Co. v. Knapp*, 240 U. S. 464, was not to be taken as authority on this question, as the application of the federal statute was there conceded in the State court. In *Jackson v. Chicago, M. & St. P. Ry. Co.*, 210 Fed. 495, the district court held that an employee while engaged in the construction of a tunnel to be used when completed by a railroad in interstate commerce was not so employed, as the Federal Employers' Lia-

bility Act does not apply to a railroad construction which has not yet become an instrument of commerce, and said: "The building of this cut-off is a facility which is to be used by the defendant, when completed, as an engine or cars, or any other appliance under construction might be considered for use when completed. Can it be said that a person engaged in the building of engines or cars, or any other facilities to be used by a common carrier engaged in interstate commerce, comes within the provisions of the Employers' Liability Act? The act deals only with the liability of a carrier engaged in interstate commerce for injuries sustained by its employees while engaged in such commerce. *Second Employers' Liability Cases,* 223 U. S. 1 [1 N. C. C. A. 875]. The act is not 'concerned with the construction of tracks, bridges, engines or cars which have not as yet become instrumentalities in such commerce, but only with the work of maintaining them in proper condition after they have become such instrumentalities, and during their use as such.' *Pedersen v. Delaware, L. & W. R. Co.,* 229 U. S. 146, 152 [3 N. C. C. A. 779]." In *Bravis v. Chicago, M. & St. P. Ry. Co.,* 217 Fed. 234, the Circuit Court of Appeals in holding that an employee engaged in the construction of a bridge 600 feet distant from the railroad on a cut-off more than a mile in length, which had never been provided with rails or used as a railroad, is not employed in interstate commerce, although his employer is so engaged and intends to use the cut-off therein when completed, said on page 236: "The argument that the building of a cut-off was the mere correction or prevention of a defect or insufficiency of the defendant's instrumentality for conducting interstate commerce is too remote and inconsequential to convince. The building of such a cut-off is new construction for use in interstate commerce, as much as the building of a new engine or car, or plans prescribed by the railroad company to run over the cut-off, or to

take the place of an engine, or car worn out in interstate commerce would be.'' In *Illinois Cent. R. Co. v. Rogers,* 221 Fed. 52, the Court of Appeals held that an employee of a railroad company while cleaning stencils used by the company to mark cars owned and used by it in interstate commerce, was not employed in interstate commerce. In *Raymond v. Chicago, M. & St. P. Ry. Co.,* 233 Fed. 239, the Court of Appeals held that a laborer in a tunnel, which when completed was intended to be used by a railroad company to shorten its line over which it transported intra and interstate commerce, is not employed in interstate commerce within the meaning of the Employers' Liability Act. In *Coal & Coke Ry. Co. v. Deal,* 231 Fed. 604, the Court of Appeals held that an employee injured while attempting to erect a telegraph pole in repairing a line used in interstate commerce was employed in interstate commerce. This case compared with those before cited illustrates the difference between repairing work used in interstate commerce and constructing work to be so used. The Supreme Court of Appeals of West Virginia in holding that an employee of a railroad engaged in interstate commerce, working in an excavation under a wooden trestle on which the employer's track crosses a small stream and near the supporting timbers thereof intended for an abutment of a steel bridge to take the place of a trestle, and to be used in lieu thereof when completed, and not repairing or altering the trestle nor otherwise engaged in work on it or the track or anything else actually used in the operation of the railroad, is not employed in interstate commerce, very thoroughly reviewed and discussed the authorities on that question in *McKee v. Ohio Valley Elec. Ry. Co.* (W. Va.) 88 S. E. 616. We conclude that deceased was not at the time of his injury employed in interstate commerce, and that the court did not err in his rulings so far as they were based on the theory that

appellant's liability was to be determined by the laws of this State.

The charges of defendant's negligence in the three counts of the declaration submitted to the jury were in different counts: (a) That Clappison and other workmen stored and kept certain of their tools in the excavation under the turntable, and from time to time went in and out of said excavation in the course of their employment to the knowledge of the defendant, and that the servant of the defendant in charge of the turntable, without using ordinary care to ascertain whether any one was in this excavation, and without any warning, turned the same while the plaintiff's intestate was in the excavation in the course of his employment, and that he was thereby killed. (b) That the defendant did not furnish a safe place for the workmen to keep their tools, but on the contrary provided and permitted to be used the excavation of this turntable for that purpose, and that as a result of such negligence the plaintiff's intestate, while in the course of his employment, in and about the tools in said excavation, was killed. (c) That while said gang of workmen was engaged in the work upon said turntable and pipe line, they had kept and stored certain of their tools with which they worked in said excavation, and from time to time went in and out in the course of their employment, all of which was well known to the defendant; that while the plaintiff's intestate was in the excavation, which was then and there known to the defendant, said turntable was carelessly turned by the operator, which resulted in the plaintiff's intestate's death.

The facts are sufficiently stated in what we have heretofore said. Any finding of defendant's negligence must rest on the charges in the declaration that the defendant knew Clappison was in the excavation at the time in question. There is no evidence supporting the allegation that the defendant did not fur-

nish him a safe place to keep his tools. Perhaps the jury were warranted in finding that workmen's tools had been so often hidden in the excavation that the defendant ought to have known that one of its servants might be there and look out for him; at least such a finding is not so manifestly against the weight of the evidence as to warrant our disturbing the verdict on that ground. It would logically follow that the operator of the turntable was not in the exercise of ordinary care in not seeing Clappison and giving warning before turning the table; but if we use the hypothetical prudent man to measure the care required of the turntable operator and find that he falls short in that requirement, we do not see how Clappison in going into the pit without warning the operator, and without observing whether an engine was signaling for the adjustment of the table can, by the same test, be held to measure up to the required standard. It seems too clear for intelligent difference of opinion that Clappison must be held at least as negligent as the operator. The verdict of $7,500 was quite as large as it should have been had there been no question of Clappison's negligence contributing to the injury. The statute of 1911 and 1912 (J. & A. vol. 3, ¶ 5449), unlike our present act, provides that contributory negligence shall be considered by the jury in reducing the amount of damages. While the language of this statute is not exactly the same as the federal statute under consideration in *Norfolk & W. Ry. Co. v. Earnest*, 229 U. S. 114, we see no way of giving effect to the provision that contributory negligence of the plaintiff shall be considered in reducing damages except as was said in that case that where the casual negligence is partly attributable to him and partly to the carrier he shall recover for damages, only a proportional amount bearing the same relation to the full amount as the negligence attributable to the carrier bears to the entire negligence attributable to both, the purpose being to

abrogate the common-law rule, completely exonerating the carrier from liability in such case, and to substitute a new rule confining the exoneration to a proportional part of the damages corresponding to the amount of negligence attributable to the employee. We think a judgment for $3,750 as large as should be allowed.

Other rulings of the court are assigned and argued by appellant as error. We find no substantial error except as above indicated. The defendant on its motion for a new trial assigned as one reason that the verdict was grossly excessive. It assigns and argues error on that ground, which we think should be sustained.

This opinion will be lodged with the clerk of this court and the appellee notified thereof. If within 7 days thereafter he remits $3,750 of the judgment it will be affirmed at costs of appellee; otherwise the judgment will be reversed and the cause remanded.

Appellee having entered a remittitur herein in the sum of $3,750, the judgment is therefore affirmed in the sum of $3,750 at the costs of appellee.

*Affirmed.*