## RAYMOND v. CHICAGO, M. & ST. P. RY. CO.

(Circuit Court of Appeals, Ninth Circuit. May 29, 1916.)

No. 2544.

1. COMMERCE ⊚ㅡ27—"INTERSTATE COMMERCE"—FEDERAL EMPLOYERS' LIABILITY ACT.

A laborer in a tunnel, which, when completed, was intended to be used by a railroad company to shorten its line over which it transported intra and inter state commerce, is not engaged in "interstate commerce," so as to maintain an action for personal injuries under Employers' Liability Act April 22, 1908, c. 149, 35 Stat. 65 (Comp. St. 1913, §§ 8657–8665).

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. ⊚ㅡ27.

For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

2. JURY ⊚ㅡ31(1)—MASTER AND SERVANT ⊚ㅡ347—JURY TRIAL—DENIAL OF.

Despite Const. U. S. Amend. 7, declaring that the right to trial by jury shall be retained, the states may deny jury trial, and Laws Wash. 1911, c. 74, providing a scheme of compensation to injured workmen without any action triable by jury, is not invalid for that reason.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 204, 214; Dec. Dig. ⊚ㅡ31(1); Master and Servant, Dec. Dig. ⊚ㅡ347.]

3. CONSTITUTIONAL LAW ⊚ㅡ313—JURY TRIAL—DENIAL—DUE PROCESS OF LAW.

As due process of law is the process due according to the law of the land, the states may abolish jury trial and so Laws Wash. 1911, c. 74, providing for compensation to injured workmen, which did away with jury trial, is not invalid under Const. U. S. Amend. 14, as denying a workman due process of law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 933; Dec. Dig. ⊚ㅡ313.]

⊚ㅡFor other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. MASTER AND SERVANT ⬤➡347—INJURIES TO SERVANT—WORKMEN'S COMPENSATION ACT—POLICE POWER.

Laws Wash. 1911, c. 74, providing for compensation to employés injured in hazardous occupations, is a valid exercise of the police power, though the compensation provided for is not great, and is not invalid as denying equal protection of the laws.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. ⬤➡347.]

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Action by William Raymond against the Chicago, Milwaukee & St. Paul Railway Company. Judgment for defendant, dismissing the petition, and plaintiff brings error. Affirmed.

John T. Casey, of Seattle, Wash., for plaintiff in error.

George W. Korte, of Seattle, Wash., for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and RUDKIN, District Judge.

GILBERT, Circuit Judge. The plaintiff in error in his complaint in the court below alleged that he was an employé of the defendant in error, and was engaged in the work of driving a tunnel to improve and better the roadbed on the defendant's main railroad line, so as to facilitate and make less difficult and expensive and more easy to secure expeditious and efficient operation of freight and passenger trains on the defendant's line, in the carriage of freight and passengers in interstate commerce. From the pleadings it appeared that the tunnel when completed would be about 14,000 feet in length, and that the plaintiff was engaged therein as a common laborer with a pick and shovel, the tunnel being intended to shorten the line which at the time ran over the mountain through which the tunnel was located. The defendant in error filed a motion for a judgment on the pleadings, on the ground that it affirmatively appeared therefrom that the complaint was based upon the federal Employers' Liability Act, that at the time when he was injured the plaintiff was not employed or engaged in interstate commerce, so as to bring his services within the terms of the act, and on the further ground that the court was without jurisdiction of the action on account of the act of the Legislature of the state of Washington (chapter 74, Laws of 1911), relating to the compensation of injured workmen, engaged in tunnel work, in force in that state. The motion was sustained, and a judgment was entered for the defendant in error, dismissing the action.

[1] The plaintiff in error contends that from the pleadings it appears that the work in which he was engaged was interstate commerce, and that the cause of action is within the terms of the federal Employers' Liability Act. He relies principally upon the case of Pedersen v. Del., Lack. & West. R. R., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914c, 153, and contends that the facts in that case as they are stated in the District Court (184 Fed. 737) and in the Circuit Court of Appeals (197 Fed. 537, 117 C. C. A. 33) are similar to the facts in the case at bar. In the District Court it is stated in

the opinion in that case that at the time of the plaintiff's injury the defendant was engaged in building an additional track, part of which was to be laid on a bridge, and that the plaintiff was hurt while upon the uncompleted structure, and while carrying material from one part of the work to another. In the Circuit Court of Appeals the statement was made that the plaintiff "was an iron worker on a bridge on which an additional track was being placed." In both of those courts it was held that the plaintiff was not engaged in interstate commerce. But in the Supreme Court the facts are stated differently. There it is said that:

"On the afternoon of his injury the plaintiff and another employé, acting under the direction of their foreman, were carrying from a tool car to a bridge, known as the Duffield bridge, some bolts or rivets which were to be used by them that night or very early the next morning in 'repairing that bridge'; the repair to consist in taking out an existing girder and inserting a new one. The bridge could be reached only by passing over an intervening temporary bridge at James avenue. These bridges were being * * * used in both interstate and intrastate commerce. While the plaintiff was carrying a sack of bolts or rivets over the James Avenue bridge, on his way to the Duffield bridge, he was run down and injured by an intrastate passenger train."

It was on that statement of the facts that the court reversed the decision of the lower courts, and held that the plaintiff was engaged in interstate commerce within the provisions of the federal Employers' Liability Act. In considering that question the court said:

"Was that work being done independently of the interstate commerce in which the defendant was engaged, or was it so closely connected therewith as to be a part of it? Was its performance a matter of indifference so far as that commerce was concerned, or was it in the nature of a duty resting upon the carrier? The answers are obvious. Tracks and bridges are as indispensable to interstate commerce by railroad as are engines and cars, and sound economic reasons unite with settled rules of law in demanding that all of these instrumentalities be kept in repair. The security, expedition, and efficiency of the commerce depends in large measure upon this being done. * * * We are of opinion that the work of keeping such instrumentalities in a proper state of repair while thus used is so closely related to such commerce as to be in practice and in legal contemplation a part of it."

We think there is a clear distinction between the facts in that case and those in the case at bar. The plaintiff in error here was engaged in constructing a new instrumentality. When completed it was intended to be used in interstate commerce, but as yet it was no part of the railroad line of the defendant in error, and it had not become an instrumentality in interstate commerce. To the state of facts which is here presented on the pleadings, the language of the Supreme Court in the Pedersen Case is applicable. The court said:

"The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged? * * * Of course, we are not here concerned with the construction of tracks, bridges, engines, or cars which have not as yet become instrumentalities in such commerce, but only with the work of maintaining them in proper condition after they have become such instrumentalities and during their use as such."

The present case is similar to Bravis v. Chicago, M. & St. P. Ry. Co., 217 Fed. 234, 133 C. C. A. 228, in which the Circuit Court of

Appeals for the Eighth Circuit held that an employé engaged in the construction of a bridge 600 feet distant from the railroad on a cut-off more than a mile in length, and which had never been provided with rails or used as a railroad, is not employed in interstate commerce, although his employer is so engaged, and intends to use the cut-off when completed. The court said:

"The mere fact that it was the purpose and intention so to use it at some future time did not make it an instrumentality of interstate commerce. That purpose and intention might be changed, and it might never be used in interstate commerce, or at all. The argument that the building of the cut-off was the mere correction or prevention of a defect or insufficiency of the defendant's instrumentality for conducting interstate commerce is too remote and inconsequential to convince."

[2, 3] It is contended that, even if the allegations of the complaint fail to bring the case within the federal Employers' Liability Law, they sufficiently allege a common-law cause of action against the defendant, and for that reason it was error to enter a judgment against the plaintiff on the pleadings. The statute of Washington of 1911 (Laws 1911, p. 345), entitled "An act relating to compensation of injured workmen," declares that the common-law system governing the remedy of workmen against employers for injuries received in hazardous work is inconsistent with modern industrial conditions, economically unwise and unfair, that the remedy of the workman has been uncertain, slow, and inadequate, and that the state of Washington, exercising its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and it provides a system of compensation in all cases of death or injury of employés in hazardous work. It declares that the construction of tunnels is a hazardous work within the meaning of the act, and it provides a schedule of contribution by employers, and a schedule of compensation in case of death or injury, declares that the total loss of eyesight is a permanent total disability within the meaning of the act, and provides that the person injured shall receive monthly, during the period of such disability, if unmarried, the sum of $20.

It is contended that the provision for the payment of this insignificant sum in a case where a strong, healthy young man has been totally deprived of his eyesight, is so inadequate that it results in depriving him of his property without due process of law, and denies him the equal protection of the laws, and deprives him of his right under the Seventh Amendment to the federal Constitution to a trial by jury. The proposition that by the Compensation Law of Washington, the plaintiff is deprived of the right to a jury trial, contrary to the provisions of the federal Constitution, cannot be sustained. Neither the Seventh Amendment nor the Fourteenth Amendment forbids the state to abolish or deny the right of trial by jury. Edwards v. Elliott, 21 Wall. 532, 22 L. Ed. 487; Walker v. Sauvinet, 92 U. S. 90, 23 L. Ed. 678. Said the court in the case last cited:

"Due process of law is process due according to the law of the land. This process in the states is regulated by the law of the state."

[4] The constitutionality of the law of the state of Washington has been affirmed in State ex rel. Davis Smith Co. v. Clausen, 65 Wash.

156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466, State ex rel. Pratt v. Seattle, 73 Wash. 396, 132 Pac. 45, State v. Mountain Timber Co., 75 Wash. 581, 135 Pac. 645, and Peet v. Mills, 76 Wash. 437, 136 Pac. 685, L. R. A. 1916A, 358, Ann. Cas. 1915D, 154. We are not convinced that the act is within the prohibition of any provision of the federal Constitution. It was adopted by the state in the exercise of its police power, and with a view of correcting an evil by the substitution of a remedy for the existing remedy, which, the act declared, "has been uncertain, slow and inadequate" for injuries which, "formerly occasional, have become frequent and inevitable." In Noble State Bank v. Haskell, 219 U. S. 104, 110, 31 Sup. Ct. 186, 55 L. Ed. 112, 32 L. R. A. (N. S.) 1062, Ann. Cas. 1912A, 487, Mr. Justice Holmes said:

"Many laws which it would be vain to ask the court to overthrow could be shown, easily enough, to transgress a scholastic interpretation of one or another of the great guaranties in the Bill of Rights. They more or less limit the liberty of the individual, or they diminish property to a certain extent. We have few scientifically certain criteria of legislation, and as it often is difficult to mark the line where what is called the police power of the states is limited by the Constitution of the United States, judges should be slow to read into the latter a nolumus mutare as against the law-making power. * * * It may be said in a general way that the police power extends to all the great public needs. Camfield v. United States, 167 U. S. 518 [17 Sup. Ct. 864, 42 L. Ed. 260]. It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare."

The state Legislature, in the exercise of its wisdom, has adopted for the case of an injury resulting in total disability to an employé a monthly compensation which is fixed and determined, and is secured to him for the remainder of his life. We are not prepared to say that it is not a better provision for him than the common-law remedy, whereby he was required to prove the negligence of the defendant, and his cause of action was subject to the defenses of contributory negligence and assumption of risk, and the amount recoverable was uncertain, and was largely to be reduced by the payment of attorney's fees.

We find no error. The judgment is affirmed.

⊙⊶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes