**LAUDADIO et al. v. WHITE CONST. CO., Inc., et al.**

No. 255, Docket 20578.

Circuit Court of Appeals, Second Circuit.

July 30, 1947.

Solomon Rothfeld, of New York City (Charles R. Katz and Sidney S. Wolchok, both of New York City, of counsel), for appellants.

John F. X. McGohey, U.S.Atty., of New York City (Louis Mansdorf, Asst. U. S. Atty., of New York City, of counsel), for appellees.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

This is an action brought under the Fair Labor Standards Act by four employees to recover from their employers over-

time compensation, liquidated damages and attorney's fees. It was commenced in a state court, removed to the federal court and tried without a jury. The trial judge ruled that during their employment by the defendants none of the plaintiffs was "engaged in commerce or in the production of goods for commerce," within the meaning of section 7 of the Act, 29 U.S.C.A. § 207, and that plaintiff Mertens was employed in an administrative capacity during the entire term of his employment and was therefore within the exemption of section 13(a) (1), 29 U.S.C.A. § 213(a) (1), as defined by the Administrator, Code of Federal Regulations, Title 29, § 541.2(A) and (B) (1). From the judgment dismissing their complaint upon the merits, the plaintiffs have appealed.[1]

During all times pertinent to this action the defendants were engaged in a joint venture under a cost-plus-fixed-fee contract with the Navy Department of the United States for the construction of a naval air station at Floyd Bennett Airfield, in Brooklyn, N. Y.[2] Their work consisted of the construction of a number of new buildings for officers' quarters, barracks, mess halls, recreation halls and a dispensary, as well as the construction of "hangars, runways, roads, seaplane ramps, docks, sewerage and light systems, telephone and power lines, steam installments [installations] and other aviation field appurtenances at Floyd Bennett Field."[3] Most of the construction work was original construction; but if extensions to existing land runways are to be considered as "reconstruction," about 5% of the total cost of all work performed under the contract with the Navy Department constituted "reconstruction." The plaintiffs were employed by the defendants in work on the joint venture. Laudadio and Michaels performed the work of "es-

[1] The judgment was entered July 30, 1945; the plaintiffs gave notice of appeal on August 13, 1945 but did not file their record and brief in this court until April 14, 1947.

[2] The United States Attorney, both at the trial and on the appeal has appeared on behalf of the defendants to protect the financial interests of the Navy Department.

[3] The defendants' contract with the Navy Department also covered work to be done at the Roosevelt Airfield in Mineola, N. Y., but for purposes of this opinion it is unnecessary to differentiate between the two and our discussion will refer only to work at the Floyd Bennett Field, to which most of the evidence related.

timators" or "quantity take-off men"; that is, from architectural or engineering drawings supplied to them they made lists of the kinds and amounts of materials (without prices) needed for the work depicted on the drawings. Such list, called a "bill of material," was then handed to the defendants' purchasing department, which thereafter procured the materials, sometimes from vendors outside the state of New York. The main work of the other two plaintiffs, Kreymborg and Mertens, was that of architectural draftsmen, that is, under instructions from superiors, they prepared plans to scale for the buildings to be constructed. Mertens, who was hired as an "Architect" also checked and corrected the work of other draftsmen, and the court found that he was an "administrative" employee and therefore exempt from the coverage of the Act.[4] The parties stipulated the amount of overtime compensation which will be due, "if the Court finds that during each week of their employment by defendants, the plaintiffs, by reason of their regularly performed services, were covered by the Fair Labor Standards Act."[5]

All the appellants contend that they were "engaged in commerce" because (1) they performed work on an existing instrumentality of interstate commerce, and (2) a substantial part of their activities related to the ordering of goods from other states. Appellant Mertens contends also that the court erred in holding him exempt as an administrative employee.

The first contention is based on the assumed premise that Floyd Bennett Field continued to be an instrumentality of commerce after the Navy took it over for a naval air station. The record is entirely barren of any evidence as to what use was made of the Field during the time the defendants were performing their contract with the Navy. If the Field were used solely to train air personnel of the Navy, it would seem to be an instrumentality of war rather than an instumentality of commerce. See Divins v. Hazeltine

Electronics Corp., 2 Cir., 163 F.2d 100, But we are not disposed to affirm for failure of proof on that point. The case was not tried on any such theory. Moreover, if the facts were known, it is extremely likely that the Navy did make some use of the Field for interstate commerce, such as the arrival and departure of officers, men and mail in interstate journeys. For purposes of decision we shall assume that to some extent interstate commerce was carried on at the Field after the Navy took it over. Hence the defendants' work, at least in so far as it involved extending existing runways, reconstructing the control tower of the Administration Building and making additions to existing hangars, was work on instrumentalities of commerce, and the defendants were "engaged in commerce," since persons who maintain and repair facilities of interstate commerce are so engaged. Overstreet v. North Shore Corporation, 318 U.S. 125, 130, 63 S.Ct. 494, 87 L.Ed. 656; J. F. Fitzgerald Const. Co. v. Pedersen, 324 U.S. 720, 724, 65 S.Ct. 892, 89 L.Ed. 1316; Walling v. Patton-Tulley Transp. Co., 6 Cir., 134 F.2d 945; Walling v. McCrady Const. Co., 3 Cir., 156 F.2d 932; Ritch v. Puget Sound Bridge & Dredging Co., 9 Cir., 156 F.2d 334.

Whether the plaintiffs are within the coverage of the Act depends upon the character of their own activities, not upon the nature of their employer's business. Overstreet v. North Shore Corporation, 318 U.S. 125, 132, 63 S.Ct. 494, 87 L.Ed. 656; Skidmore v. John J. Casale, Inc., 2 Cir., 160 F.2d 527, cert. den. 67 S.Ct. 1205. The test to determine whether an employee is engaged in commerce is stated in McLeod v. Threlkeld, 319 U.S. 491, at page 497, 63 S.Ct. 1248, 1251, 87 L.Ed. 1538, to be "not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it." Such a test is not easy of application. The

---

[4] Kreymborg, who was originally hired as "Assistant Superintendent", was also found to be an administrative employee during the first three months of his employment.

[5] Under the stipulation, Laudadio's claim for overtime compensation is $400.88; Michael's $719.10; Kreymborg's $567.42; Mertens' $556.88.

plaintiffs' work in connection with the above mentioned instrumentalities of commerce was merely making drawings therefor to scale or preparing "bills of material." Nevertheless, this paper work was essential to the repairs and alterations made by other employees of the defendants and was, in our opinion, sufficiently closely related to the movement of commerce to justify a holding that the plaintiffs were "engaged in commerce."[6] However, the record does not enable us to determine to what extent the plaintiffs performed work pertaining to the instrumentalities above mentioned. There are no findings of fact on this issue and the evidence is conflicting as to their work on entensions of the runways.[7] Such conflict cannot be resolved by an appellate court.

■■ In so far as the plaintiffs' work consisted of preparing plans and bills of material for new buildings or for generally making over a small commercial airfield into a large naval air station, we do not think the work pertained to instrumentalities of commerce. It is the physical immediacy of connection with actual transportation movement that determines whether an employee's activities cause him to be "engaged in commerce," as we understand it. Certainly the plaintiffs' work with respect to construction of officers' quarters, barracks, mess halls, recreation halls, etc., is more remotely connected with interstate flights of airplanes than is their work on runways, control tower and hangers; indeed, the work of constructing such appurtenances for the convenience of personnel would seem no more closely related to commerce than the work of the cook in McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538. Pedersen's case, 324 U.S. 720, 65 S.Ct. 892, 89 L.Ed. 1316 does not hold that new construction not yet devoted to interstate commerce is within the coverage of the Act. Although "entirely new abutments" to a railroad bridge were being built, they were to replace abutments that had been washed out; the work was repairing of an existing instrumentality rather than the building of a structure not yet devoted to commerce. In Walling v. Patton-Tulley Transp. Co., 6 Cir., 134 F.2d 945, 946, the work was "the construction and repair of dikes and revetments" on the Mississippi River; such structures became instrumentalities of commerce as soon as they were built. Walling v. McGrady Const. Co., 3 Cir., 156 F.2d 932, 934, and Ritch v. Puget Sound Bridge & Dredging Co., 9 Cir., 156 F.2d 334 [156 F.2d 934] appear to go somewhat further. The former involved, among other work, "putting in foundations for a new signal tower and foundations and sub flooring for a new maintenance building and storehouse" for a railroad company, and the latter involved [156 F.2d 335] "constructing as a part of the pier the mechanical facilities for the repair of combat vessels of the Navy." It seems difficult to reconcile these two decisions with the rulings of the Wage and Hour Administrator.[8] But however that may be, we should have to go even further to hold that the present plaintiffs were "engaged in commerce" in performing the work now under consideration, and should have to disregard the Admini-

---

[6] In Ritch v. Puget Sound Bridge & Dredging Co., 9 Cir., 156 F.2d 334 a draftsman and time-keepers whose employer was engaged in work of deepening harbor waters were held within the coverage of the Act.

[7] Mr. Basile, the chief engineer, testified that construction on the runways was commenced April 4, 1942 and finished August 20, 1942. He said that Mr. Laudadio performed no work for the runways.

[8] 1944-45 Wage and Hour Manual, Interpretative Bulletin No. 5, paragraph 12, at page 18:

" * * * The employees of local construction contractors generally are not engaged in interstate commerce and do not produce any goods which are shipped or sold across State lines. Thus, it is our opinion that employees engaged in the original construction of buildings are not generally within the scope of the Act, even if the buildings when completed will be used to produce goods for commmerce. * * * "

See also paragraph 13, at page 23, which deals with "employees of contractors engaged in *maintaining, repairing* or *reconstructing* railroads * * * or other essential instrumentalities of interstate or foreign commerce" [italics inserted].

strator's opinion on the precise subject of airfields (1944-45 Wage and Hour Manual, at p. 91):

"The new barracks and administration buildings, however, are apparently separate units which are physically segregated from any existing buildings so that their construction constitutes, in our opinion, original construction work not covered by the Act."

With this opinion we agree.

■ The appellants contend that they were "engaged in commerce" because a substantial part of their activities related to the ordering of goods from other states. It is true that substantial quantities of materials were purchased by the defendants from sources outside New York and delivered across state lines. It is also true that the drawings and bills of materials had to be prepared by the appellants before the defendants' purchasing department could make the required purchases; their work, however, was merely preparatory to ordering the goods. If the bills of materials included items which the purchasing department necessarily had to order from sources outside the state of New York, then, in our opinion, the appellants were "engaged in commerce." On the other hand, if the items listed in the bills of material could have been obtained either from depots within the state or from depots outside the state so that the decision as to which source to utilize rested wholly within the discretion of the purchasing department, we do not think that the plaintiffs were "engaged in commerce," although in fact the goods were ordered from outside the state.[9] In other words, the test of the "remoteness" or "closeness" of the plaintiffs' activities to the movement of goods in interstate commerce depends upon the bill of materials itself, not upon the decision which the purchasing department made with respect to particular items listed in the bill of materials. The present record does not permit us to apply this test. Upon the new trial it may be possible to do so.

■ The final contention is that the court erred in finding Mertens exempt as an administrative employee. Although the evidence is not completely convincing, we cannot hold the finding "clearly erroneous." Mr. Basile, the chief engineer, testified that Mr. Mertens "had men under his supervision," was "the supervisor of his department," architectural drafting, and his work of supervision required "the exercise of discretion." This is enough to support the court's finding.

As to Mertens the judgment is affirmed; as to the other appellants it is reversed and remanded for further proceedings in conformity with this opinion.

---

9 Cf. A. H. Phillips, Inc., v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095, 157 A.L.R. 876, where the duties of the employees, who checked invoices, paid bills and kept inventory records, apparently related to specific and identifiable goods received from outside the state.