### KOEPFLE v. GARAVAGLIA et al.
### No. 11494.

United States Court of Appeals
Sixth Circuit.

Dec. 1, 1952.

George Henry Flynn, Detroit, Mich., on the brief, for appellant.

Clarence A. Reid and Wilber M. Brucker, Detroit, Mich., on the brief, for appellees.

William S. Tyson, Bessie Margolin, William A. Lowe, and David F. Babson, Jr., Washington, D. C., Aaron A. Caghan, Cleveland, Ohio, amicus curiae.

Before ALLEN, MARTIN and MILLER, Circuit Judges.

ALLEN, Circuit Judge.

The question presented by this appeal is whether the building of a highway located entirely within a single state, newly constructed upon a right of way which runs through an area where no highway

Watts, Tex.Civ.App., 193 S.W.2d 979; Texas Co. v. Brown, Tex.Civ.App., 82 S. W.2d 1101; and 17 Texas Jur., p. 565, Sec. 234.

has theretofore existed, constitutes "commerce" or the "production of goods for commerce" within the meaning of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq., 29 U.S.C.A. § 201 et seq. From October 30, 1948, to May 15, 1949, plaintiff was employed by defendants as a watchman upon the Edsel Ford Expressway, which was then being constructed by defendants.[1] Plaintiff filed an action claiming $3950.96 for 1508 hours overtime work which he alleged had been wrongfully withheld in violation of provisions of the Fair Labor Standards Act.

In their answer defendants alleged in substance that plaintiff was paid overtime for all over 40 hours per week in accordance with the prescribed classification and rate of the Michigan State Highway Department rules and regulations covering the work done on the Edsel Ford Expressway.[2] This allegation was not denied. A motion for summary judgment was filed by the defendants upon the ground that no genuine issue was presented as to any material fact. After hearing, the District Court held that upon the undisputed facts the highway was entirely new and originally constructed, not following any existing right of way, route or trunk line, federal, state, county, or city; that the work upon the expressway was not repair, maintenance or reconstruction of any existing facility; and that the plaintiff and his employers were not engaged in commerce or the production of goods for commerce. The court therefore held that defendants were entitled to a summary judgment of no cause of action as a matter of law.

The Edsel Ford Expressway is located entirely within Detroit, Wayne County, Michigan. Land was condemned for the right of way which ran through an area where there was no existing highway. While it is an approved federal aid route and its construction is financed in coopera-

tion by the federal government, the state, the county, and the city, it is not designated as a federal trunk line. The expressway is a depressed highway, its bed dug to a deep level below the adjacent land so that transverse traffic cannot reach the expressway except by ramps provided for that purpose. During the entire period of plaintiff's employment the expressway was neither completed nor open for traffic. When completed it will become an extension of State Route M–112, which in turn connects with United States Route 112. These facts are shown by an affidavit of the Deputy State Highway Commissioner of the State of Michigan and Chief Engineer of the Michigan State Highway Department, by the affidavit of the defendants' office manager, and by concession of counsel for both parties. Plaintiff filed affidavits in opposition claiming that the expressway connects directly with State Route M–112 which in turn connects with two United States routes and that Edsel Ford Expressway will carry and increase the flow of interstate commerce.

The District Court at the hearing upon the motion for summary judgment asked the attorney for the plaintiff whether he desired to present additional evidence as to the applicability of the Fair Labor Standards Act. He replied, "I don't think under the law that would be necessary;" said, "I think we are satisfied. * * *" "The facts are agreed upon. Now, the whole question in this case is the law."

The question squarely presented is whether the fact that the Edsel Ford Expressway crosses other streets in Detroit and eventually, when completed, will carry interstate traffic makes it fall within the category of constructions to which the Fair Labor Standards Act applies rather than the regulations and rates of the Michigan State Highway Department.

The Secretary of Labor, in a brief amicus curiae filed by leave of court, contends that, irrespective of the ruling

1. The parties will be denominated as in the trial below.

2. While the John C. Lodge Expressway was included with the Edsel Ford Expressway in the hearing below, it is conceded that it is not involved in this appeal.

upon the merits, the record does not warrant a summary judgment of dismissal.

■ This court has recently applied the rule of the Supreme Court that summary judgment should not be permitted except "where it is quite clear what the truth is". Sartor v. Arkansas Natural Gas Corporation, 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967; Estepp v. Norfolk & Western Ry. Co., 6 Cir., 192 F.2d 889; Joseph S. Jozwiak v. United States of America, 6 Cir., 199 F.2d 369. However, as conceded by plaintiff's counsel, it is quite clear here what the truth is as to the facts. The only question is what rule of law is applicable; whether the certainty that interstate traffic will in the future move across a completely local highway makes plaintiff's employment, under this record, subject to the Fair Labor Standards Act. This was plaintiff's only contention and, if it is without merit, the judgment of dismissal was rightly entered.

We think the District Court correctly held that the Fair Labor Standards Act does not apply.

■ Plaintiff urges that original construction upon land never before used as a highway falls within the definition of "commerce" or the "production of goods for commerce" because eventually some interstate commerce will move upon it. If this is the applicable rule, every passable country road is within the same classification for practically every road, however isolated and however local, at some point carries passengers or freight to or from some interstate destination. This sweeping contention is not sustained by the sound and applicable law. Nieves v. Standard Dredging Corporation, 1 Cir., 152 F.2d 719; Crabb v. Welden Bros., 8 Cir., 164 F.2d 797; Scholl v. McWilliams Dredging Co., 2 Cir., 169 F.2d 729; Kam Koon Wan v. E. E. Black, Limited, 9 Cir., 188 F.2d 558; Kelly v. Ford, Bacon & Davis, Inc., 3 Cir., 162 F.2d 555; Wells v. Ford, Bacon & Davis, Inc., 6 Cir., 145 F.2d 240.

■ In the Wage Hour Manual, Bureau of National Affairs Labor Relations Reporter, Volume 6, the rule is interpreted as follows:

10:237:

"In interpreting the Act's application to the employers in the building and construction industry, the Wage and Hour Division and the courts have drawn a distinction between the original construction of buildings or facilities and the repair or reconstruction."

10:238:

"The distinction between original construction and repair or reconstruction has also been recognized by the numerous lower federal and state courts which have decided cases involving the Act's covering of building and construction operations."

This interpretation by the administrative Bureau charged with enforcing the Fair Labor Standards Act, while not controlling, is highly persuasive. Cf. Cooper v. Rust Engineering Co., 6 Cir., 181 F.2d 107, 108.

■ Even before the enactment of the Fair Labor Standards Act new construction of facilities which had not yet become instrumentalities of commerce was differentiated from repair and maintenance of existing instrumentalities. Pedersen v. Delaware, Lackawanna & Western Rd. Co., 229 U.S. 146, 151 and 152, 33 S.Ct. 648, 649, 57 L.Ed. 1125. The Supreme Court there pointed out that repair of existing instrumentalities is so closely related to interstate commerce "as to be in practice and in legal contemplation a part of it." The Court also stated significantly: " * * * we are not here concerned with the construction of tracks, bridges, engines or cars which have not as yet become instrumentalities in such commerce". Here the highway was completely new. It was clearly not being repaired. It was not and could not be an instrumentality of commerce, for it had not been opened to traffic. The construction was to be considered as retaining until its completion the status which it had at the beginning. Scholl v. McWilliams Dredging Co., supra, 169 F.2d 732.

Plaintiff relies upon such decisions as Walling v. Patton-Tulley Transportation Co., 6 Cir., 134 F.2d 945, and Bennett v. V. P. Loftis Co., 4 Cir., 167 F.2d 286. This line of cases applies to repair maintenance or improvement of pre-existing interstate facilities. In the Patton-Tulley case construction of dykes and revetments on the Mississippi River was held by this court to be construction in interstate commerce. The Mississippi River for centuries had been an artery, first of intertribal and international and later of interstate traffic. In the Bennett case the bridge in question, though new, was built to replace an existing structure which had long been used in interstate commerce. The Big Inch pipeline involved in Schmitt v. War Emergency Pipelines, Inc., 8 Cir., 175 F.2d 335, clearly was at the time of the improvement interstate construction. This record, on the contrary, involves construction wholly within a city wholly within one state, where buildings and vacant lots were condemned for the purpose of constructing a relatively short road not yet completed at the time of hearing. No case cited by plaintiff requires such an extension of the established rule as would be implicit in the reversal of this decision.

The judgment of the District Court is affirmed.