**DURKIN, Secretary of Labor v. C. W. VOLL-MER & CO., Inc.**

**Civ. A. No. 3280.**

United States District Court
E. D. Louisiana, New Orleans Division.

June 25, 1953.

Earl Street, Regional Atty., T. Hogan Allin, and Harry Campbell, Jr., Dallas, Tex., for plaintiff.

Deutsch, Kerrigan & Stiles and Robert E. Leake, Jr., New Orleans, La. for defendant.

WRIGHT, District Judge.

Plaintiff brings this action seeking to enjoin the defendant from violating the provisions of sections 7 and 11(c) of the Fair Labor Standards Act [1] relating to the nonpayment to employees of overtime and failure to keep proper employee work records. The question presented is whether the defendant's employees are "engaged in commerce" within the meaning of section 7(a) of the Act.

The defendant entered into a contract with the United States through the Corps of Engineers, Department of the Army, under the terms of which defendant agreed to construct an earth-work embankment and concrete platform for Algiers Lock, Orleans Parish, Louisiana. Algiers Lock is part of the proposed Algiers Lock and Canal. Algiers Lock and Canal will be a part of the Gulf Intracoastal Waterway and will serve as an alternate lock and canal connection with the Mississippi River in the vicinity of the Port of New Orleans. The present connection in that vicinity, Harvey Lock and Canal, is proving inadequate alone to handle the volume of traffic in the Gulf Intracoastal Waterway.

The Gulf Intracoastal Waterway from Apalachee Bay, Florida, to the vicinity of the Mexican Border is an instrumentality of interstate commerce and is regularly navigated by vessels and barges in transporting goods in interstate commerce. At the present time eastbound navigation on the Gulf Intracoastal Waterway enters the Mississippi River from the Harvey Lock and Canal and then proceeds down river 5.5 miles to the Industrial Lock and Canal where it leaves the river. Westbound navigation, of course, reverses this procedure. The stretch of 5.5 miles in the Mississippi River is through the harbor of New Orleans where intracoastal traffic must compete with ocean-going traffic for room to navigate. In addition, the banks of the river on both sides are highly developed with commercial facilities including docks and wharves serving the Port of New Orleans. Further, there is along this stretch Algiers Point, which marks an acute bend in the river. The navigation of this point by both ascending and descending traffic is particularly difficult because of the swift current moving down river.

The current federal project for intracoastal waterways, as outlined in Senate Document 188 [2], includes, in addition to the construction of Algiers Lock and Canal, the improvement, enlargement and extension of the Gulf Intracoastal Waterway by increasing its present depth and width and extending it west and south to the Mexican Border. This project also covers the cutting of a canal through northern Florida thereby connecting the Gulf Intracoastal Waterway with the Atlantic Intracoastal Waterway. The completion of the project depends on the continued appropriation of federal funds.

Algiers Lock and Canal, which has not been completed, is entirely new construction. The proposed nine mile canal does not follow any pre-existing right of way and, when completed, will not replace any existing canal or other navigable waterway. As has been stated, it will simply be an alternate route for entering the Mississippi River from the west and leaving it from

---

1. 29 U.S.C.A. § 201 et seq.

2. 78th Congress, 2nd Session.

the east. Its primary purpose, in addition to relieving the congestion which now obtains in Harvey Lock and Canal, will be to eliminate the necessity of Gulf Intracoastal Waterway traffic navigating the 5.5 miles of the Mississippi River through the crowded harbor of New Orleans and around treacherous Algiers Point.

The government alleges that Algiers Lock and Canal is merely an improvement of the existing waterway being constructed pursuant to the over-all project for the improvement and enlargement of the intracoastal waterways of the United States as outlined in Senate Document 188. As such, the government contends, the employees working on the construction of the Algiers Lock are "engaged in commerce" or so closely connected thereto they are covered by the Fair Labor Standards Act. The defendant on the other hand maintains that the building of Algiers Lock is new construction and therefore employees concerned with the building of the lock are not covered.

█ The question presented here for adjudication is an extremely narrow one. It is clear that persons engaged in the maintenance and repair of interstate instrumentalities are within the coverage of the act. Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656; Pedersen v. J. F. Fitzgerald Construction Co., 318 U.S. 740, 742, 63 S.Ct. 558, 87 L.Ed. 1119; Alstate Construction Company v. Durkin, 345 U.S. 13, 73 S.Ct. 565; Thomas v. Hempt Bros., 345 U.S. 19, 73 S.Ct. 568. It is likewise clear that persons engaged in the construction of new interstate instrumentalities are not covered by the act. Raymond v. Chicago, Milwaukee & St. Paul Ry. Co., 243 U.S. 43, 37 S.Ct. 268, 61 L.Ed. 583; J. F. Fitzgerald Construction Co. v. Pedersen, 324 U.S. 720, 65 S.Ct. 892, 89 L.Ed. 1316; Nieves v. Standard Dredging Corp., 1 Cir., 152 F.2d 719; Laudadio v. White Construction Co., 2 Cir., 163 F.2d 383; Reed v. Murphey, 5 Cir., 168 F.2d 257; Scholl v. McWilliams Dredging Co., 2 Cir., 169 F.2d 729; Koepfle v. Garavaglia, 6 Cir., 200 F.2d 191. Consequently, does the building of Algiers Lock and Canal amount to maintenance and repair of the Gulf In-

tracoastal Waterway or is it new construction as defined in the cases cited?

Although the government argues that the Algiers Lock and Canal is merely an improvement of the existing waterway, no cases are submitted which hold that improvement of an interstate instrumentality through the construction of a new or alternate route is covered by the act. All of the government cases relate to the improvement of an existing instrumentality by the construction of revetments and the like in the instrumentality itself. Walling v. Patton-Tulley Transportation Co., 6 Cir., 134 F.2d 945; Bennett v. V. P. Loftis Co., 4 Cir., 167 F.2d 286; Schmitt v. War Emergency Pipelines, 8 Cir., 175 F.2d 335; Tobin v. Pennington-Winter Const. Co., 10 Cir., 198 F.2d 334; Ritch v. Puget Sound Bridge & Dredging Co., 9 Cir., 156 F.2d 334; Walling v. McCrady Const. Co., 3 Cir., 156 F.2d 932.

██ It is true that the Supreme Court has held that the provisions of the Fair Labor Standards Act should be liberally construed in order to carry out the basic social purpose of the act. Tennessee Coal Co. v. Muscoda Local No. 123, 321 U.S. 590, 597, 64 S.Ct. 698, 88 L.Ed. 949. However, in 1949 Congress, apparently motivated by a feeling that the courts had gone too far in extending coverage, amended the act limiting the coverage to some extent. Amendment of Oct. 26, 1949, Chapter 736, § 3, 63 Stat. 911, 29 U.S.C.A. § 203(j). Statement of House Conferees, Report No. 1453, 81st Congress, pp. 14–15. While the amendment does not bear on the point at issue here, nevertheless, it does show that Congress in passing the Fair Labor Standards Act did not intend that coverage under the act would be coextensive with the power of Congress to control interstate commerce. This fact has been recognized by the courts. Kirschbaum Co. v. Walling, 316 U.S. 517, 523, 62 S.Ct. 1116, 86 L.Ed. 1638; Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460. Under the test for coverage as judicially determined the work in question must either be "in commerce" or so closely connected thereto as to be a part thereof. Pedersen v. Delaware, L. &

W. R. Co., 229 U.S. 146, 33 S.Ct. 648, 57 L.Ed. 1125; Overstreet v. North Shore Corp., supra.

■ In applying this rule, the Wage and Hour Division itself draws a distinction between original construction and repair or reconstruction.[3] The recognition by the Division that new construction is not covered by the act, while not controlling, is highly persuasive. Overstreet v. North Shore Corp., 318 U.S. 125, n. 129, 63 S.Ct. 494, 87 L.Ed. 656; Koepfle v. Garavaglia, 6 Cir., 200 F.2d 191, 193. Unless the fact that the Algiers Lock and Canal will become a part of an existing waterway after it is completed makes the building thereof "repair or reconstruction", under the Division's own interpretation, defendant's employees are not covered by the act.

■ Since there is no authoritative holding respecting coverage under the Fair Labor Standards Act of work performed in the construction of an alternate route for an existing interstate instrumentality, guidance may be sought from decisions interpreting coverage under the Federal Employers' Liability Act.[4] Overstreet v. North Shore Corp., supra. So doing, there is the case of Raymond v. Chicago, Milwaukee & St. Paul Ry. Co., supra [243 U.S. 43, 37 S.Ct. 269], in which the railroad, an interstate carrier, was engaged in construction of a tunnel for the purpose of "shortening its main line and making more efficient and expeditious its freight and passenger service". One of its employees was injured in the construction of the tunnel and filed suit under the Federal Employers' Liability Act. At the time of the injury the tunnel was not complete and was not connected with the main line of the railroad. In denying recovery, the Supreme Court held "it is certain * * * that * * * Raymond and the railway company were not engaged in interstate commerce at the time the injuries were suffered".

The new construction doctrine [5] of the Raymond case has been applied in cases brought under the Fair Labor Standards Act and it would seem that the principles there announced are applicable here. J. F. Fitzgerald Company v. Pedersen, supra; Nieves v. Standard Dredging Corp., supra; Laudadio v. White Const. Co., supra; Reed v. Murphey, supra; Scholl v. McWilliams Dredging Company, supra; Koepfle v. Garavaglia, supra. If the government were simply building a canal which, when completed, would connect two interstate waterways, it would hardly be asserted that the work on such construc-

---

3. In the Wage Hour Manual, Bureau of National Affairs Labor Relations Reporter, Volume 6, the rule is interpreted as follows:

10:237:

"In interpreting the Act's application to the employers in the building and construction industry, the Wage and Hour Division and the courts have drawn a distinction between the original construction of buildings or facilities and the repair or reconstruction."

10:238:

"The distinction between original construction and repair or reconstruction has also been recognized by the numerous lower federal and state courts which have decided cases involving the Act's covering of building and construction operations."

Wage and Hour Division Bulletin No. 5 of October, 1940, page 7, paragraph 12 reads as follows: "The employees of local construction contractors generally are not engaged in interstate commerce and do not produce any goods which are shipped or sold across state lines. Thus it is our opinion that employees engaged in original construction of buildings are not generally within the scope of the Act, even if the building when completed will be used "to produce goods for commerce."

4. Before the 1939 amendment to Federal Employers' Liability Act expanded coverage under that Act. 53 Stat. 1404; 45 U.S.C.A. § 51 et seq.; Overstreet v. North Shore Corp., supra.

5. The new construction doctrine was first recognized in Pedersen v. Delaware, L. & W. R. Co., 229 U.S. 146, at page 152, 33 S.Ct. at page 650:

"Of course, we are not here concerned with the construction of tracks, bridges, engines, or cars which have not as yet become instrumentalities in such commerce, but only with the work of maintaining them in proper condition after they have become such instrumentalities and during their use as such."

tion was within the coverage of the act. The mere fact that the Algiers Lock and Canal, when completed, will become a part of the integrated system of intracoastal waterways of the United States should not change this conclusion. Until the Algiers Lock and Canal is dedicated to and used for interstate commerce, it cannot be said that the work thereon is "in commerce" or so closely connected thereto as to be a part thereof. As a matter of fact, should Congress fail to appropriate the necessary funds, Algiers Lock and Canal will never be completed and consequently it would then never become an artery of commerce. See Parham v. Austin Co., 5 Cir., 158 F.2d 566.

Judgment accordingly.