**MOSS v. GILLIOZ CONST. CO. et al.**

**No. 4614.**

United States Court of Appeals
Tenth Circuit.

July 27, 1953.

Paul W. Brightmire, Tulsa, Okl., for appellant.

David F. Babson, Jr., Washington, D. C. (Harry N. Routzohn, Sol., Dayton, Ohio, Bessie Margolin, Asst. Sol., William A. Lowe, Atty., U. S: Dept. of Labor, Washington, D. C., and Earl Street, Reg. Atty., Dallas, Tex., on brief of amicus curiae of the Secretary of Labor).

Edward V. Sweeney, Monett, Mo., for appellees.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

This is an appeal from a judgment of the District Court dismissing the appellant's claim under Section 16(b) of the Fair Labor Standards Act of 1938, as amended, 52 Stat. 1060, 29 U.S.C.A. § 201, for unpaid minimum and overtime wages, liquidated damages and attorney fees.

The complaint alleged in substance that during the time material here the appellees were engaged in constructing a bridge across the Arkansas River south of Tulsa, Oklahoma, known as the 51st Street Bridge; that upon completion, the bridge was to become a part of United States interstate Highway 66, replacing the road over the 11th Street Bridge in Tulsa; that from March 20, 1951 to July 3, 1952, appellant was employed on the project as a night watchman, in which capacity he worked 102 hours a week, receiving 49½c per hour. The work was alleged to be an essential part of the construction of the bridge for use in interstate commerce and therefore employment in commerce.

In support of its motion to dismiss, appellees attached an affidavit of appellee, M. E. Gillioz, stating in substance that the contract covered only the construction of the bridge, separate contracts having been awarded for the paved approaches; that the bridge was not built to replace an existing bridge, nor did it constitute repair, maintenance, alteration, extension or improvement of an existing installation; that the bridge was not connected with any existing roadway, and was built at a place where there had never been a bridge or means of crossing the River.

The trial court expressed the view that the project was new construction, not a repair or extension of a structure or facility that had been or was being used in interstate commerce. Assuming that upon completion the bridge would become a part of the bypass route for interstate Highway 66, the court was nevertheless of the view that appellant's work on the bridge was too remote from the channels of commerce to be deemed an essential part of it. Since the judgment is based upon a motion to dismiss for failure to state a claim, we take as true all of the factual allegations in the claim, leaving only the legal conclusion from facts well pleaded.

There is no allegation or contention that the appellant was engaged in the production of goods for commerce as that phrase is used in Section 7(a) and defined in Section 3(j) of the Act. Indeed, it cannot be said that the appellant was engaged in the production of goods for commerce or in any other manner working on such goods. We therefore lay aside as inapposite cases like Alstate Construction Co. v. Durkin, 345 U.S. 13, 73 S.Ct. 565, and E. C. Schroeder Co. v. Clifton, 10 Cir., 153 F.2d 385, where off-the-road employees were engaged in the production of goods to be used on a facility employed in interstate commerce, or to replace an interstate facility; and cases such as Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118, and Mid-Continent Pipe Line Co. v. Hargrave, 10 Cir., 129 F.2d 655, where the employees were deemed to be engaged in an occupation essential to the production of goods for commerce.

■ The narrow and decisive issue here is whether at the time complained of the appellant was "engaged in commerce" as that critical phrase of coverage is used in Section 7(a) of the Act. In the determination of that question, we keep in mind that by

the use of the phrase "engaged in commerce", Congress intended to extend the coverage of the Fair Labor Standards Act "throughout the farthest reaches of the channels of interstate commerce." Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 335, 87 L.Ed. 460; Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656. To that end, if an employee's work or duties, while not actually a part of the movement of interstate commerce, are so closely and intimately connected therewith as for all practical purposes to be an essential part of it, they are held to be in the channels of commerce and the employee is therefore "engaged in commerce". Reduced to its simplest terms, the question is usually one of "physical immediacy". See Laudadio v. White Construction Co., 2 Cir., 163 F.2d 383, 386.

We know of course that employees engaged in the original construction of a project or facility are not within the channels of interstate commerce. McDaniel v. Brown & Root, Inc., 10 Cir., 172 F.2d 466, 471 and cases cited; Crabb v. Welden Bros., 164 F.2d 797; Scholl v. McWilliams Dredging Co., 8 Cir., 169 F.2d 729; Koepfle v. Garavaglia, 6 Cir., 200 F.2d 191. We also know that the particular facility or project worked upon need not be actually employed in commerce during the time of its construction. It is sufficient if the duties or work performed can be said to be repair, addition, replacement or improvement to an existing interstate facility, such as work on "entirely new abutments" to replace abutments to an existing interstate railroad bridge, Pederson v. J. F. Fitzgerald Construction Co., 318 U.S. 740, 742, 63 S.Ct. 558, 87 L.Ed. 1119; the construction and repair of dykes and revertments on the Mississippi River, Walling v. Patton-Tulley Trans. Co., 6 Cir., 134 F.2d 945; the relocation of a portion of a county road, new bridges in different locations from the old with new approaches to one, all a part of or connected with interstate highways; relocating and regrading an underground conduit and construction of a new conduit to partially replace an old one regularly used in interstate telephonic communications; the removal of an old railroad bridge

and partial building of a new one, repairing a roundhouse, putting in foundations for a new signal tower and foundations and subflooring for a new maintenance building and storehouse for an interstate railroad company, Walling v. McCrady Construction Co., 3 Cir., 156 F.2d 932; the deepening of navigable waters by new channels with retaining walls to prevent silting of channels from pier sides for navigation of Navy combat ships, Ritch v. Puget Sound Bridge & Dredging Co., 9 Cir., 156 F.2d 334; extending existing runways, reconstructing the control tower of an administration building and making additions to existing hangars at an airport, formerly an instrumentality of interstate commerce and to be partially used as such after the construction was completed and the United States Navy took it for military purposes, Laudadio v. White Construction Co., 2 Cir., 163 F.2d 383; the construction of a new bridge to replace an old one used in interstate commerce, Bennett v. V. P. Loftis Co., 4 Cir., 167 F.2d 286; and the construction on a new dam which, when completed, would become an integral part of a comprehensive interstate power and flood control project, Tobin v. Pennington-Winter Construction Co., 10 Cir., 198 F.2d 334. These cases serve only to illustrate the factual distinction between work on new construction deemed outside the channels of interstate commerce, and repair, reconstruction, improvement or addition to an existing interstate facility deemed within the channels of interstate commerce.

Certainly the construction of the 51st Street Bridge was not physical or mechanical maintenance, repair, improvement or an addition to an existing bridge used in interstate commerce. Nor can it be said to be a physical replacement as in Bennett v. V. P. Loftis Co., supra. Appellant's duties were performed upon a new facility which, when completed, would not replace the 11th Street Bridge, except insofar as interstate traffic would be rerouted over it. Indeed, this is the most that can be said of the allegations of the complaint, it is the most that can be said for appellant's claim. We do not believe the mere fact that interstate traffic will be rerouted

over the bridge after completion is sufficient to bring appellant's work upon it within the farthest reaches of the channels of interstate commerce. Cf. Koepfle v. Garavaglia, 6 Cir., 200 F.2d 191.

The judgment is affirmed.

HUXMAN, Circuit Judge (specially concurring).

The legal principles which determine the issue presented are clear and without dispute in the authorities. It is unanimously held that a new instrumentality, which upon completion is to be dedicated to the use of interstate commerce or the production of goods for such commerce is not, during the period of its construction and prior to its dedication to such use, employed in commerce and workers thereon are not during such time engaged in commerce. But the difficulty as always comes when we undertake to apply this legal principle to a given state of facts. The line of demarcation between new construction on the one hand and repairs and improvement of existing facilities of commerce on the other becomes more vague and indistinct as we enter the twilight zone separating these two classifications. We ultimately reach a point where it cannot be said with that finality or certainty of conviction which is desirable that an activity falls within one or the other of these two classifications.

It can be said with a great deal of emphasis and force of logic that eliminating a dangerous curve on an existing highway, or expediting traffic thereon by rerouting a portion thereof through a less densely populated portion of the city, constitutes an improvement or repair and not the construction of a new facility, and that this be so even though a new right of way must of necessity be acquired and perhaps new bridges built. On the other hand, if we say the construction in question here is new construction, then it could be argued with force that the elimination of a dangerous right angle turn on a highway by the construction of an angle turn of only a few hundred feet constitutes new construction. In the end, however, each case must be judged by its own facts.

In Raymond v. Chicago, M. & St. P. Ry. Co., 9 Cir., 233 F. 239, the railroad company eliminated the necessity of operating its interstate railway over the mountains by constructing a tunnel through the mountain and routing its traffic that way. It was held that an employee engaged in work upon the tunnel was not engaged in interstate commerce. On appeal, the Supreme Court affirmed. 243 U.S. 43, 37 S.Ct. 268, 61 L.Ed. 583. In Bravis v. Chicago, M. & St. P. Ry. Co., 8 Cir., 217 F. 234, 236, it was held that an employee engaged in the construction of a bridge 600 feet distant from a railroad on a cut-off more than a mile in length, which had never been used as a railroad, was not employed in interstate commerce. In its opinion the court stated, "The argument that the building of the cut-off was the mere correction or prevention of a defect or insufficiency of the defendant's instrumentality for conducting interstate commerce is too remote and inconsequential to convince. The building of such a cut-off is new construction for use in interstate commerce, as much as the building of a new engine or car on plans prescribed by a railroad company to run over the cut-off or to take the place of an engine or car worn out in interstate commerce would be." In Pedersen v. Delaware Lack. & West. R. R., 229 U.S. 146, 33 S.Ct. 648, 650, 57 L.Ed. 1125, the Supreme Court held that employees engaged in maintaining tracks, bridges, engines or cars were engaged in commerce but the court took occasion to say, "Of course, we are not here concerned with the construction of tracks, bridges, engines, or cars which have not as yet become instrumentalities in such commerce, * * *."

While the question is not free from doubt and while the authorities cited above are not conclusive because the facts are not identical, I cannot say with that firmness of conviction one should have in overturning a finding by a trial court that the court erred in finding that the construction in question was new construction and not repair or improvement of an existing facility of commerce, and, therefore, join my Associates in upholding the judgment appealed from.