Sam GUY

v.

G. E. MOORE & CO., Inc.

Civ. A. No. 344.

United States District Court
M. D. Tennessee, Columbia Division.

June 7, 1955.

Frank P. White, Lewisburg, Tenn., and M. A. Peebles, Columbia, Tenn., for plaintiff.

Shelton & Shelton, Columbia, Tenn., for defendant.

MILLER, District Judge.

Plaintiff sues under Sections 7 and 16 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. §§ 207 and 216, for overtime wages, liquidated damages, and attorneys' fees.

The complaint alleges that the defendant was employed as an independent contractor by the City of Columbia, Tennessee, to construct a water purification plant for the City to enlarge and supplement its existing water system; that the plaintiff was employed by the defendant as a night watchman in connection with the construction work from August 1, 1953, through October 10, 1953; that the plaintiff was employed for a total of 84 hours during each week and received wages at the regular rate of $55 per week, but received no wages or compensation for overtime; that during the said period the plaintiff should have been paid overtime wages or compensation for each hour in excess of forty in such work week at the rate of not less than $2.06¼ per hour as required by Section 7 of the Act, being accordingly underpaid the sum of $90.75 for each full week, or $891 for the entire period; that the enlargement of the City's water system by the construction of a second purification plant was necessary to furnish water to various industries in and about Columbia engaged in the production of goods to be shipped and transported in interstate commerce.

In its answer defendant denies the plaintiff's right to sue or to recover under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 201 et seq.; admits that it was employed by the City as an independent contractor to construct a purification plant; denies the allegations of the complaint with respect to the plaintiff's wages and the terms of his employment; and denies that in the performance of its construction contract

it was engaged in commerce or in the production of goods for commerce. It alleges that the contract with the City of Columbia was for the construction of a totally new raw water intake and pumping station and water treatment plant; that the new plant was not connected in any way with the existing water system by defendant's employees and no water was furnished to industries serving interstate commerce while defendant's work on the construction was in progress; and that the defendant, in the execution of its construction contract, did not cross any interstate highways, railroads, or other transportation lines serving interstate commerce.

The material facts, stipulated by the parties, may be briefly summarized as follows:

The City of Columbia prior to August 1, 1953, owned, maintained, and operated a water system, which included a purification plant, from which it supplied water to industries producing goods in commerce. On or before August 1, 1953, it entered into a contract with the defendant for the construction of a totally new water purification system upon new land specifically acquired for that purpose. It was intended by the City that the new purification plant, when completed, should be connected with the old water system, and the connection was actually made on May 4, 1954, at the time the new construction was completed. The new water purification system was undertaken by the City of Columbia to enable it to supply the growing needs of the local users of water as well as industries producing goods in commerce. The old or first purification plant and the new or second purification plant are supplied by the same source of water.

Plaintiff was employed upon the new construction by the defendant as a night watchman on either August 1, or August 4, 1953, and such employment was terminated on either October 8, or October 10, 1953. His employment was at the rate of $55 per week for seven days' work, twelve hours per day. He accepted payment on that basis from the beginning of his employment to the termination of his employment, and it is stipulated that the amount of unpaid overtime, computed under the Fair Labor Standards Act, is $245. On October 10, 1953, at the time the plaintiff was discharged, the new construction had not been completed and no water from it had been used by the City of Columbia.

From the stipulated facts, the plaintiff contends that while employed by the defendant as night watchman in connection with the construction of the new purification plant, he was either engaged in commerce or in the production of goods for commerce and that his employment was, therefore, governed by the Fair Labor Standards Act, entitling him under its provisions to overtime compensation and to maintain an action to recover such compensation in addition to liquidated damages and attorneys' fees.

In support of this contention, plaintiff insists that the undisputed facts show that the new purification plant was designed simply to improve or to augment and enlarge an existing water system already engaged in supplying water to industries producing goods for commerce; and that the new construction is no more than an addition to or an improvement of an existing facility already substantially dedicated to the production of goods for commerce.

■ In the opinion of the Court, the facts of the case do not warrant the conclusion that the plaintiff was engaged in the production of goods for commerce as that phrase is used and defined in the Fair Labor Standards Act, 29 U.S.C.A. §§ 207 and 203(j).

The contract of the defendant with the City was to build a purification plant as an entirely new facility. The new plant was not to replace but at most to supplement the old one. The contract did not involve the production of goods for commerce or in any manner working on such goods. It is true that the plant, when completed, would become an integral part of a water system which, as a whole, would supply water to industries producing goods for commerce, but the con-

struction work itself is too remote from the production of goods for commerce by the users of water to come within the coverage of the Act.

The cases of Alstate Const. Co. v. Durkin, 345 U.S. 13, 73 C.St. 565, 97 L.Ed. 745, and Thomas v. Hempt Bros., 345 U.S. 19, 73 S.Ct. 568, 97 L.Ed. 751, relied upon by plaintiff, are factually distinguishable and are not considered apposite. In both cases, the defendants were directly engaged in the production of goods for commerce—in the Alstate case an asphalt mix, and in the Thomas case, a concrete material. In both cases the goods produced were sold to be used and were actually used for the construction, maintenance, or repair of highways which accommodated a substantial amount of interstate traffic.

In the instant case, on the other hand, the defendant, in constructing the purification plant, did not produce or in any manner handle goods for commerce. At the most, it constructed a plant which, when completed, would supply to other industries a product which in turn would play a part in the production of goods for commerce.

Also, the Court is persuaded that the defendant cannot be considered to have been engaged in commerce within the meaning of the Fair Labor Standards Act.

The facts bring the case within the pattern of such cases as Raymond v. Chicago, M. & St. P. R. Co., 243 U.S. 43, 37 S.Ct. 268, 269, 61 L.Ed. 583; Bravis v. Chicago, M. & St. P. R. Co., 8 Cir., 217 F. 234; Moss v. Gillioz Const. Co., 10 Cir., 206 F.2d 819, and Durkin v. C. W. Vollmer & Co., Inc., D.C., 113 F.Supp. 235.

In Raymond v. Chicago, M. & St. P. R. Co., supra, the Supreme Court applied the new construction doctrine in denying plaintiff relief in an action arising under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. The plaintiff was employed on work which involved the cutting of a tunnel through a mountain for the purpose of shortening the defendant's main rail-road line and making more efficient and expeditious its freight and passenger service. It appeared that at the time the plaintiff was injured, the tunnel was only partially completed and hence was not in use as an instrumentality of interstate commerce.

There was a similar ruling under the Federal Employers' Liability Act in Bravis v. Chicago, M. & St. P. R. Co., supra, where the injured employee was engaged in the construction of a bridge 600 feet distant from a railroad on a cut-off more than a mile in length which had never been provided with rails or used as a railroad, although it was the intention of the railroad company to use the cut-off in interstate commerce when completed.

Moss v. Gillioz Const. Co., supra [206 F.2d 821], was an action under the Fair Labor Standards Act. After an extensive review of the authorities, the Court there ruled that there was no coverage under the Act with respect to the plaintiff's employment by the defendant in constructing a bridge across the Arkansas River which, upon completion, was to become a part of a United States Interstate Highway, replacing the road over an existing bridge. The Court concluded its opinion in that case as follows:

"Certainly the construction of the 51st Street Bridge was not physical or mechanical maintenance, repair, improvement or an addition to an existing bridge used in interstate commerce. Nor can it be said to be a physical replacement as in Bennett v. V. P. Loftis Co., supra [4 Cir., 167 F.2d 286]. Appellant's duties were performed upon a new facility which, when completed, would not replace the 11th Street Bridge, except insofar as interstate traffic would be rerouted over it. Indeed, this is the most that can be said of the allegations of the complaint, it is the most that can be said for appellant's claim. We do not believe the mere fact that interstate traffic

**560**

will be rerouted over the bridge after completion is sufficient to bring appellant's work upon it within the farthest reaches of the channels of interstate commerce. Cf. Koepfle v. Garavaglia, 6 Cir., 200 F.2d 191."

The decision in Durkin v. C. W. Vollmer & Co., Inc., supra, is also persuasive. It was there held that employees engaged in constructing a lock as an alternate route for an existing interstate waterway, were not engaged in interstate commerce, or so closely connected thereto as to be a part of such commerce, within the contemplation of the Fair Labor Standards Act. Consequently, employees enaged in such work were not covered by the Act, even though the lock, when completed, would thereafter become a part of an integrated system of interstate waterways.

Plaintiff relies upon Tobin v. Pennington-Winter Construction Co., 10 Cir., 198 F.2d 334. In that case there was a comprehensive plan for the improvement of the Arkansas and Mississippi Rivers from the standpoint of their navigability and their usefulness as channels of interstate commerce. The defendant was employed as a part of such plan in connection with the construction of a dam across the Illinois River which is a non-navigable stream but a tributary of the Arkansas River which in turn empties into the Mississippi River. The Court held that the construction of dams and other improvements on any of the streams within the watershed of the Arkansas and Mississippi Rivers, for the purpose of aiding navigation and preventing floods, must be considered as items of a single production undertaken to effectuate such purpose. The Court further said that the construction of a new dam is not to be considered as a separate construction but rather as an addition to or an improvement of an existing instrumentality of interstate commerce.

It is clear from the opinion in that case that the Court considered the construction of the dam on the Illinois river to be directly connected with commerce or the production of goods for commerce for the reason that the navigation or flood control system was an entity within itself consisting of the main streams, watersheds and tributaries, and that any new facility on any part of the system is necessarily an improvement or addition to the system itself. Since the Illinois River was already an integral part of a navigation and flood control system, dedicated to commerce, it necessarily followed that the construction of a dam on that river was an improvement or addition to an existing facility. Here, however, the construction of a completely new purification plant did not involve work upon any part of the system as it existed before the construction was undertaken.

The line of demarcation between new construction, on the one hand, and improvements or additions to existing facilities already dedicated to commerce, on the other hand, must be determined upon the facts of each case and is largely a question of degree. If the particular activity is directly and intimately connected with commerce or the production of goods for commerce, there is coverage under the Act. If the connection is remote and indirect, there is no coverage.

Considering the peculiar facts of the Tobin case, the Court considers that the degree of intimacy and close relationship there found by the Court, because of work done upon an existing artery of commerce, does not exist in this case.

For the reasons indicated and upon the authority of the cases cited, the Court is of the opinion that the plaintiff was neither engaged in commerce nor in the production of goods for commerce and consequently that he was not covered by the provisions of the Fair Labor Standards Act.

Accordingly, an order will be submitted denying the relief sought and dismissing the plaintiff's action.